JOHN A. ROBINSON *vs.* JOHN W. CLAPP.

Third Judicial District, Bridgeport, October Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, JS.

Where the branches of a tree extend over an adjacent owner's land, he may lop them off up to his line, even though that were practically to the trunk of the tree.

Robinson *v.* Clapp.

The interest or property rights of adjoining proprietors in a tree, the trunk of which stands on the dividing line, is not an ordinary tenancy in common, but is one of a peculiar nature. Each owner has an interest in the tree equal to the part that stands upon his land, with the right to insist that the owner of the other portion shall so use his part as not unreasonably to injure or destroy the whole.

Whether the removal of that portion of a tree which stands upon the land of one proprietor, and the consequent destruction or injury of the whole tree, is reasonable or otherwise, is so largely a matter of discretion, depending upon all the facts and circumstances, that in a doubtful case the conclusion of the trial court in awarding or refusing an injunction will not be disturbed.

A declaration by a vendor to his vendee that a well, not on the land to be conveyed, "belonged to" and "would be sold" with such land, is irrelevant and inadmissible where the only question is as to the legal effect of the deed as written. Its admission, to impair the title of a *bona fide* purchaser for value and without notice, of the adjoining tract on which such well was located, is error. The fact that such purchaser derived his title from a quitclaim deed is entirely immaterial.

A good faith purchaser of land by quitclaim deed, for full consideration, has a right to the same protection against secret, unrecorded incumbrances on the premises, as if his title were by warranty deed.

An injunction should not issue to prevent a landowner, in building on his own land, from covering a well on the dividing line, when the adjoining proprietor who seeks the injunction has long suffered the well to be covered, and made no use of it, and it does not appear that it is ever likely to be needed, or that the erection of the building will destroy its use.

A grantee of a part of a tract of land has no implied grant or easement of light and air, as against a subsequent *bona fide* purchaser of the remaining portion, unless the alleged easement is so evidently necessary to the reasonable enjoyment of his premises, so continuous in its nature, so plain, visible and open, and so manifest from the situation and relation of the two parts, as to fairly and clearly indicate to the prospective purchaser of the remaining portion that it was the intention of the parties to the sale of the first portion to create and continue such an easement, and to charge him with knowledge that law and equity forbid him, in case of his purchase, to so occupy his part as to interfere with such easement.

The doctrine of implied grants of light and air should be applied with great caution, and not to a case of diminution rather than exclusion of light, where the convenience rather than the real necessity of the party claiming the easement is interfered with.

An injunction should be so definite in its terms that the person enjoined may know with reasonable certainty what acts he may and may not do, without making himself liable to contempt.

[Argued October 24th, 1894—decided January 8th, 1895.]

SUIT for an injunction to restrain the defendant, an adjoining proprietor, from injuring a boundary line tree and well of water, and from interfering with the free access of light and air to the rooms of the plaintiff's dwelling-house; brought to the Court of Common Pleas in New Haven County and tried to the court, *Cable, J.*; facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *Error and new trial granted.*

The case is sufficiently stated in the opinion.

*Henry G. Newton* and *J. Birney Tuttle*, for the appellant (defendant).

I. The defendant under his quitclaim deed stands in the same position as if he had received a warranty deed. *Sherwood* v. *Barlow*, 19 Conn., 471–476; *Ely* v. *Stannard*, 44 id., 528; *Dart* v. *Dart*, 7 id., 250; *Rogers* v. *Hillhouse*, 3 id., 398; *Potter* v. *Tuttle*, 22 id., 512; *Dodd* v. *Seymour*, 21 id., 476.

II. The court erred in enjoining the defendant " from such interference with the tree mentioned in the complaint as will destroy or injure the same." This injunction is too indefinite. Plaintiff would claim that cutting off any limb injured the tree. Defendant would claim that he might remove all the limbs for twenty feet from the ground and thus build his house. Defendant has a right to know just how far he can go.

III. No case has been found of an injunction against cutting a tree on a city lot for the purpose of erecting a building. Injunctions will not be granted where the injury done by the injunction to the defendant must necessarily be greater than the injury done by the act threatened. It cannot be that courts will hold that city lots cannot be built upon, where such building would involve the removing of parts of a tree which grow upon the lot. The cases in the books relate only to forest trees.

In this State it is well settled that if the branches injure the land over which they hang, or are in any way a nuisance to the adjoining owner, he may lop off everything above his

land. Both branches and fruit, however, belong to the owner of the trunk, and the adjoining owner must not carry away either. If the trunk of this tree rested wholly on plaintiff's land, and any amount of trunk and branches projected over defendant's land, it is perfectly clear that defendant might cut off everything which overhung his land, and erect his house. 5 Thompson's Remedies and Remedial Rights, No. 2291; Wood on Nuisances, 113; *Lyman* v. *Hale*, 11 Conn., 177; 1 Washburn on Real Property, 139, 3d edition; Cooley on Torts, 672. It seems absurd to suppose that because a part of the trunk stands upon defendant's land he has less right to remove the nuisance than if he owned no part of it.

Some of the cases seem to hold that a tree standing on a boundary line, where part of the trunk is on the land of each adjoining owner, belongs to both in common. On examination, this will in all such cases be found to mean that neither has a right to the whole tree. The law of this State differs from that of most in holding that a tenant in common may sever the joint property, where it is advisable, and take his share of it. In *Dubois* v. *Beaver*, 25 N. Y., 183, one of two adjoining proprietors cut and carried away trees which stood upon the division line. The court held that the other owner could recover for the value of so much of the wood as stood upon his side of the line. This case is strongly in point, and strongly in our favor. Defendant does not propose to cut down the tree. He admits that he has no right to do any cutting on plaintiff's land, but he has a right to build the house. *Griffin* v. *Bixby*, 12 N. H., 458, was a case where defendant cut and carried away the whole tree. It was rightly held to be a trespass; but no such trespass is intended here.

IV. The court erred in enjoining the defendant against "such interference with the well as will deprive the plaintiff of the use of same." On the face of the finding defendant has not intended to do anything which would deprive the plaintiff of the use of the well.

V. The court erred in enjoining defendant from building

so near to plaintiff's premises as to exclude the light from his dwelling-house.

In the first place this injunction is too indefinite. It does not even inform defendant whether or not he may build the house which he intended to build. Secondly, no injunction should have issued. The plaintiff invokes the ancient rule that, "if one owning a house with windows looking out upon adjoining land of his own, sells such house, he may not afterwards build upon such adjacent land and thereby stop or obstruct the light of such windows."

This ancient proposition has never been adopted in this State. It was formerly held so in Massachusetts, but in a late well-considered case the former rulings were reversed, and it was held that no grant of any right of light and air from adjoining lands is to be implied from the conveyance of a house. *Keats* v. *Hugo*, 115 Mass., 205. The law is the same in New York. *Shipman* v. *Peters*, 2 Abb. N. C., 435. To the same effect are *Mullen* v. *Stricker*, 19 Ohio St., 135; *Kiper* v. *Klein*, 51 Ind., 316; *Morrison* v. *Marquardt*, 24 Ia., 35.

The ancient doctrine of implied grant of light and air is a twin of the doctrine of a prescriptive right to light and air, which has been condemned in nearly or quite every State in the Union, including Connecticut. General Statutes, § 2970. 6 Amer. & Eng. Ency. of Law., p. 152, note 3; Washburn on Easements and Servitudes, p. 583; *Parker* v. *Foote*, 19 Wend., 309; *Carrig* v. *Dee*, 14 Gray, 583.

VI. It was clearly error for the court to admit evidence of the conversation between Waite and Robinson, to the effect that Robinson was to have the well. The title of a subsequent purchaser of an adjoining tract could not thereby be impaired.

*Earlliss P. Arvine*, for the appellee (plaintiff).

I. The plaintiff had an easement, by implied grant, of light and air over the land in question owned by the defendant. *Shoemaker* v. *Shoemaker*, 11 Abb. N. C., 84 (N. Y.); *Simmons* v. *Closson*, 81 N. Y., 557; *Factory Co.* v. *Batch-*

*elder*, 3 N. H., 190 ; *Kenyon* v. *Nichols*, 1 R. I., 411 ; *Cool-idge* v. *Hazen*, 43 Vt., 9 ; *Mason* v. *King*, 62 Ill., 35.   The easement claimed by the plaintiff has been upheld by the courts as a part of the common law of England from *Palmer* v. *Fletcher*, 1 Lev., 122 (1664), down to the present time. *Ewart* v. *Cochrane*, 7 Jur. N. S., 925 ; *Compton* v. *Richards*, 1 Price, 27 ; *Robinson* v. *Grace*, 27 L. T. N. S., 648 ; *Robinson* v. *Grace*, 29 L. T. N. S., 7 ; *Whedon* v. *Burrows*, 48 L. J. Ch. 853 ; *Myers* v. *Catterson*, L. R., 43 Ch. Div., 481.

This implied easement of light and air over other land of the grantor is a part of the common law of the State.   1 Swift's Dig., 165 ; *Card* v. *Gilman*, 5 Conn., 118.   See also *Clauson* v. *Primrose*, 4 Del. Ch. 666 ; *McCready* v. *Thomson*, Dudley's Rep. (S. C.) 131 ; *Guber* v. *Grabel*, 16 Ill., 217 ; *Hughes* v. *Kelly*, 40 Conn., 154.

The passage of the statute abolishing the acquirement by prescription of the easement of light and air in this State, was a recognition that the English common law as to the easement of light and air existed in this State.   We have thus a recognition by the legislature of the existence of the law of easements, so far as it can be obtained by prescriptive right.   It would be absurd to say that the common law of England, as to the prescriptive right, was in force in this State up to the passage of the Act, and that the common law relative to implied grant, did not exist here.   It is not presumed that the legislature intended to make any innovation upon the common law further than the necessity of the case required.   Sutherland on Statutory Construction, § 290.   The English common law relative to implied grants was distinctly recognized as being a part of the common law of this State, by the opinion of this court in *Bushnell* v. *Proprietors*, *etc.*, 31 Conn., 158.   See also *Russell* v. *Prior*, 6 Mod., 116 ; *Story* v. *Odin*, 12 Mass., 157.

Massachusetts abolished the common law easement of light and air by prescription, but has always upheld the doctrine of implied easements of necessary light and air over other land of the grantor.   *Fifty Associates* v. *Tudor*, 6 Gray, 255 ; *Collier* v. *Pierce*, 7 Gray, 18 ; *Randall* v. *Sander-*

*son*, 111 Mass., 106 ; *Salisbury* v. *Andrews*, 128 Mass., 336 ; *Case* v. *Minot*, 158 Mass., 584 ; *Keats* v. *Hugo*, 115 Mass., 204, to the contrary notwithstanding.

The adjudications in this country directly upon this point, may be said to have occurred in three periods or eras. The first period contains the cases of *Story* v. *Odin*, 12 Mass., 157 (1818), and *U. S.* v. *Appleton*, 1 Sum., 492 (1833). Both these cases strictly followed the English rule. A few years later several cases involving this question were decided apparently contrary to the English rule. *Myers* v. *Gummel*, 10 Barb., 537, and *Palmer* v. *Wetmore*, 2 Sandf., 316, and some others in New York, all of which were overruled by *Lampman* v. *Milks*, 21 N. Y., 512 ; *Mullen* v. *Stricker*, 19 Ohio St., 135, which was decided on the authority of *Maynard* v. *Esher*, 17 Pa. St., 222, and *Haverstick* v. *Sipe*, 33 id., 368. The latter two have been overruled by *Runnyson's Appeal*, 94 id., 152 (1880), and *Mullen* v. *Striker* was in turn practically overruled by *Bank* v. *Cunningham*, 46 Ohio St., 587. This line of authority, antagonistic to the rule at bar, culminates in the case of *Keats* v. *Hugo*, 115 Mass., 204.

The later decisions show that the English rule with slight modifications has now been established as the only fair and equitable rule in this country. *Rennyson's Appeal*, 94 Pa. St., 152 ; *Buss* v. *Dyer*, 125 Mass., 291 ; *Henry* v. *Koch*, 80 Ky., 391 ; *Dunkles* v. *Wilton* R. R., 24 N. H., 495 ; *Ingalls* v. *Plomondon*, 75 Ill., 123 ; *Burns* v. *Gallagher*, 62 Md., 473 ; *Morrison* v. *Marquardt*, 24 Ia., 63 ; *Turner* v. *Thomson*, 58 Ga. 273 ; *Morrison* v. *King*, 62 Ill., 35 ; *Case* v. *Minot*, 158 Mass., 584 ; *Bukeley* v. *Smith*, 27 Gratt. (Va.), 896 ; *Sutphers* v. *Thukelson*, 38 N. J. Eq., 318 ; *Havens* v. *Klein*, 51 How. Pr., 82 ; *James* v. *Jenkins*, 34 Md., 1 ; *Warren* v. *Blake*, 54 Me., 286 ; *Dillman* v. *Hoffman*, 38 Wis., 572 ; *White* v. *Bradley*, 66 Me., 263 ; *Ogden* v. *Jenkins*, 62 N. Y., 531.

These decisions clearly establish as American common law, the doctrine expressed in the opinion of the Supreme Court of this State in *Bushnell* v. *Proprietors*, above cited, with perhaps the addition that the light, the exclusion of which is threatened, is " necessary light." That in the case

at bar the light is "necessary" cannot be doubted. The
trial court found as a fact that the erection of the proposed
building would make it necessary for the plaintiff to use
artificial light in the day time in order to have a reasonable
use of his rooms. The plaintiff and his family could doubt-
less continue to exist deprived of abundant light, air, or
many of the so-called necessaries of life ; but none the less
a plentiful supply of all these is reasonably necessary to the
comfortable enjoyment of life. *Montague* v. *Richardson*, 24
Conn., 338; *Ins. Co.* v. *Patterson*, 103 Ind., 589; *Atkins* v.
*Boardman*, 2 Metc., 463.

The defendant, as grantee of William Waite, is bound by
the implied grant of the easement to the plaintiff. The im-
plied grant is binding on the privies in estate of the grantor.
*Deming* v. *Carrington*, 12 Conn., 1; *Ramsbottom* v. *Phelps*, 18
id., 285; *Trustees* v. *Lynch*, 70 N. Y., 449. The finding
shows that the defendant had notice.

II. The well is appurtenant to the plaintiff's dwelling-
house and is necessary thereto. *French* v. *Morris*, 103
Mass., 68; *Paine* v. *Chandler*, 134 N. Y., 385. An easement
is never lost by non-user. There must be some evidence of
an intent to abandon, added to the mere non-user. Wash-
burn on Easements, 639; *King* v. *Murphy*, 140 Mass., 254;
*Curran* v. *Louisville*, 83 Ky., 632. The person entitled to
the easement may use his privilege or not, as he pleases;
nor is he obliged to put on the records of the court his rea-
sons for the non-user. The well was included in the pur-
chase of the house and was an inducement thereto.

The declarations of the actual vendor at the time of the
sale in reference to the well were admissible. Beecher, the
plaintiff's grantor, was merely a trustee or agent of Waite
and wife, to convey the premises to the plaintiff. The real
grantors were Waite and wife. The declarations of the ven-
dor at the time of the sale were clearly admissible to prove
that the plaintiff had at least an equitable interest in the well.
*Norton* v. *Pettibone*, 7 Conn., 323; *Deming* v. *Carrington*,
12 id., 5; *Smith* v. *Martin*, 17 id., 400; *Ramsbottom* v. *Phelps*,
18 id., 285; 1 Greenl. on Ev., § 287; *Coverly* v. *Coverly*,

124 Mass., 316. At all events this evidence, even if inadmissible, did the defendant no harm.

III. The right of the plaintiff to have the tree continue undisturbed cannot be controverted. A tree standing on the line between adjoining owners, so that the line runs through it, is the common property of both parties. *Griffin* v. *Bixby*, 12 N. H., 458; 1 Washburn, Real Prop., 7, 8. Tenants in common are such as hold by unity of possession, because none knoweth his own severalty; hence they hold in common until legal partition be made. The attempt of one co-tenant to make partition without the consent of the other is void. *Griswold* v. *Johnson*, 5 Conn., 365–6; *Kennedy* v. *Scoville*, 12 id., 327. The cutting down or injury of shade or ornamental trees is an irreparable injury, which the courts will prevent by injunction. 1 Am. State Rep., pp. 364, *et seq.; Wilson* v. *Mineral Point*, 39 Wis., 160; *Musch* v. *Burkhardt*, 83 Iowa, 301; High on Injunctions, § 344. In a case like this the damage done is not measured by the value of the tree. The damage to the premises by the loss of the tree must be considered, and is of uncertain measure. *Hoyt* v. *Tel. Co.*, 60 Conn., 385.

The defendant purchased his land having lived in plain view of it for many years, and well knew of the existence and position of the tree, the well, and the windows in plaintiff's house. He derives his title from a quitclaim deed, without warranty against incumbrances, and hence takes and holds his land subject to any burdens imposed upon it by his grantor, or which in law or in equity exist in behalf of any other person.

FENN, J. Upon the complaint of the plaintiff, claiming an injunction to restrain the defendant from doing certain acts on the defendant's own land, adjacent to land of the plaintiff, the Court of Common Pleas for New Haven County found the following facts:—

On September 21st, 1883, one William Waite was, and for a long time had been, the owner in fee of certain premises on the northerly side of Bradley street in the city of New Haven,

61 feet front on said street, and 98 feet deep.    A dwelling-house stood on the westerly part of said lot.    On said day, said William Waite, through a third person, conveyed to his wife, Elizabeth, the westerly part of said lot, 40 feet front, on which said dwelling-house stood.    On August 23d, 1888, the said 40 foot lot was, by warranty deed, conveyed to the plaintiff by an agent of Mr. and Mrs. Waite, to whom it had been previously conveyed for that purpose.    On October 6th, 1888, William Waite quitclaimed his right, title and interest in the remaining 21 feet of the original lot, to the defendant.

On the boundary line between the premises of the plaintiff and the defendant there stands a maple tree of about forty years' growth, about sixteen inches in diameter, and with a branch extension of from forty to fifty feet.    This tree is a valuable one to the plaintiff, as a shade tree and ornament, and shades a part of the plaintiff's premises.    The boundary line runs substantially through the middle of the trunk of said tree.    At the time that said William Waite erected said dwelling-house, which was more than twenty years previous to the plaintiff's purchase, he dug and connected with said dwelling-house, by pipes, a well, and used said well of water as appurtenant to said house during the period of his ownership, up to and within a short time previous to said purchase. For some five years previous to the plaintiff's purchase, and up to the time when said Waite ceased to use said well, such use was by means of a curb and bucket.    The plaintiff has never used said well, which has been covered up ever since he has owned the premises.    The defendant does not intend to destroy the well.    At the time of the plaintiff's purchase, the well was connected with the house by means of pipes, and there was a concrete walk leading from the house to the well, across said boundary line, and continuing into that part of the premises owned by the defendant, along the extent of the flag-stone that crowns the well.    This stone, which is about five and a half feet in length, extends some three and a half feet upon the defendant's land.    The well is two and

a half feet in diameter, and adjoins the line, but is practically all of it upon the land of the defendant.

On the trial the plaintiff and said William Waite both testified that a few days previous to the plaintiff's purchase, and while negotiations were pending, said Waite told the plaintiff that said well went with the house and would be sold to him, and this statement was a substantial inducement to the plaintiff in making said purchase. To the admission of this evidence the defendant objected, but the court overruled the objection and admitted the evidence, the defendant duly excepting, and the court found the facts to be as testified.

The plaintiff's principal sitting-room and the room over it, the dressing-room, are on the east side of the house, and derive their light solely from a bay-window, having its windows on the easterly, northeasterly and southeasterly sides thereof. Said rooms are so inclosed on all sides by other parts of the structure, that no other means of light than from the east side is possible, without a substantial reconstruction of that part of the building. The east face of said bay-window is between five and six feet beyond the line of the side wall of the house from which such window projects, and is five feet from said boundary line. The stairway and hall of the dwelling-house is lighted by a stained glass window in the easterly side of the house, and has also a glass in the south door.

The defendant threatens and intends to build, and has made a contract for the building of a dwelling-house to extend down along the boundary line for a distance of fifty-eight feet from a point about six feet from said Bradley street, the wall of which is to be about twenty feet high, and threatens to remove so much of the tree as is on his side of said boundary line. The construction of a dwelling-house on the line, as the defendant intends to construct it, would cover the well, and that portion of the premises on his side of the line on which said tree stands, and the removal of that portion of the tree which the defendant threatens to remove would destroy the life of the whole

tree.   Such construction would also deprive the plaintiff of
the supply of light which has come across said twenty-one
feet now owned by the defendant, and would make it nec-
essary for the plantiff to light his sitting-room and dressing-
room with gas, or some other light, in the day-time, in order
to obtain sufficient light for the reasonable use of the rooms.
At the time of purchase by the plaintiff, and at the time of
the purchase by the defendant, there was no fence or other
visible sign of demarcation marking said boundary line.
And said original tract of land owned by William Waite
was, at the time of the erection of said dwelling-house
thereon, and ever afterwards until the execution of the
deeds above mentioned, an undivided tract of land.   The
defendant, previous to his purchase, had lived within one
hundred feet of the premises, and was fully acquainted with
the same.

Upon these facts the court, overruling the claims of the
defendant, rendered judgment for the plaintiff, enjoining and
restraining the defendant "from such interference with the
tree mentioned in the complaint, as will destroy or injure
the same, and such interference with the well mentioned in
the complaint, as will deprive the plaintiff of the use of the
same ; also from erecting any building upon the premises
described as the property of the defendant, so near as to
exclude the light from the plaintiff's dwelling-house."

The defendant's appeal assigns eleven reasons, some of
which are not important.   Taken as a whole, however, they
present, in substance, four alleged grounds of error which
we deem it necessary to consider.   *First*, in restraining the
defendant from interference with the tree.   *Second*, with the
well, including the admission of evidence.   *Third*, from ex-
cluding the light.   *Fourth*, that the judgment rendered is
uncertain.   We will examine each of these, and in the order
above indicated.

First, in reference to the tree.   Upon the subject of the
rights of the parties in a tree situated as this is, it is said in
Washburn on Real Prop., Vol. 1, § 7*a:* "The law as to
growing trees may be regarded so far peculiar as to call for

a more extended statement of its rules as laid down by different courts. * * * In the first place, trees which stand wholly within the boundary line of one's land belong to him, although their roots and branches may extend into the adjacent owner's land. * * * But the adjacent owner may lop off the branches or roots of such trees up to the line of his land. If the tree stand so nearly upon the dividing line between the lands that portions of its body extend into each, the same is the property, in common, of the land-owners. And neither of them is at liberty to cut the tree without the consent of the other, nor to cut away the part which extends into his land, if he thereby injures the common property in the tree." This is the doctrine of our own court in *Lyman* v. *Hale*, 11 Conn., 177, cited by Washburn. See also 26 Amer. & Eng. Ency. of Law, p. 558. We may, therefore, limit our investigation to the inquiry as to the logical application of the principles of that case to the present one. In that case the tree stood upon the plaintiff's land, but its branches extended some distance across the line, and some of its roots ran into the defendant's ground. The action was trespass *quare clausum fregit* for entering upon the plaintiff's land and picking up pears, the fruit of the tree. The defendant claimed to be either tenant in common or joint owner with the plaintiff, or exclusive owner of the pears gathered, which fell on his own land from overhanging branches. The claim of joint ownership urged, rested on the fact that the roots extended into the defendant's ground, and that the tree derived a part of its nourishment from his soil. In reviewing and disapproving the authorities cited in support of such claim, this court said: " Is it the doctrine of these cases, that whenever a tree, growing upon the land of one man, whatever may be its distance from the line, extends any portion of its roots into the lands of another, they therefore become tenants in common of the tree ? We think not; and if it were, we cannot assent to it. Because, in the first place, there would be insurmountable difficulties in reducing the principle to practice ; and, in the next place, we think the weight of authorities is clearly the other way. How, it may

be asked, is the principle to be reduced to practice? And here, it should be remembered, that nothing depends upon the question whether the branches do or do not overhang the lands of the adjoining proprietor. All is made to depend solely upon the inquiry, whether any portion of the roots extend into his land. It is this fact alone, which creates the tenancy in common. And how is the fact to be ascertained?

"Again; if such tenancy in common exist, it is diffused over the whole tree. Each owns a certain proportion of the whole. In what proportions do the respective parties hold? And how are these proportions to be determined? How is it to be ascertained what part of its nourishment the tree derives from the soil of the adjoining proprietor? If one joint owner appropriate all the products, on what principle is the account to be settled between the parties?

"Again; suppose the line between adjoining proprietors to run through a forest, or grove. Is a new rule of property to be introduced, in regard to those trees growing so near the line as to extend some portions of their roots across it? How is a man to know whether he is the exclusive owner of trees, growing, indeed, on his own land, but near the line; and whether he can safely cut them, without subjecting himself to an action?

"And again; on the principle claimed, a man may be the exclusive owner of a tree, one year, and the next, a tenant in common with another; and the proportion in which he owns may be varying from year to year, as the tree progresses in its growth.

"It is not seen how these consequences are to be obviated, if the principle contended for be once admitted. We think they are such as to furnish the most conclusive objections against the adoption of the principle."

We have quoted so much at length, because it must be obvious that by far the greater part of this most cogent reasoning applies with equal force against the doctrine of a tenancy in common of a tree standing upon the dividing line between two properties, and extending its body, no matter

in what proportion, into each.   It is true the opinion appears
to concede that in such a case the tenancy would exist, and
such is the familiar statement of the treatises and opinions.
The expression is probably well enough and sufficiently accu-
rate for practical purposes, but it is not entirely correct as
appears to us to be clearly shown in an article in the Albany
Law Journal, Vol. 10, p. 226, which points out that where a
tree stands partly on the lands of each of two adjoining
proprietors, the possession of each must be always confined
to that portion of the tree which is on his side of the boun-
dary line, in view of the greater dignity and permanence of
real estate tenure, as compared with the temporary and chang-
ing nature of growing timber.

In addition to what we have said, it must be apparent that
the very nature of things differentiates such a so-called com-
mon interest from an ordinary tenancy in common, either of
real or of personal property.   In the case of a tree like the one
in question, yielding no fruit, of trifling value for wood, if
cut, of no value while standing, except for ornament or shade,
what relief by any remedy, legal or equitable, provided for
ordinary tenants in common, can a part owner of such tree,
to whom its continued existence is of no advantage but an
injury, obtain ?   Can he call upon the other part owner to
account for the benefit which he has derived from such orna-
ment or shade ?   Could he in this State procure a partition
of the growing tree, as real estate, under General Statutes,
§ 1304 ?   And if he did, would not the lines of his own, and
the adjacent land, divide the tree as they did before, leaving
the rights of the parties identical in effect with what they
were before ?   Could he obtain a sale of the tree under Gen-
eral Statutes § 1307, either as real estate or personal property,
that would carry the right to have it destroyed or removed ?
If it be conceded, as it must be, that he could do none of
these, it will be evident, we think, that the tenancy in common
in a tree is of a peculiar nature, if there be such a tenancy
at all.

It would really seem to come to this, that each of the land-
owners upon whose land any part of a trunk of a tree stands

has an interest in that tree, a property in it, equal in the first instance to, or perhaps rather identical with, the part which is upon his land; and in the next place embracing the right to demand that the owner of the other portion shall so use his part as not unreasonably to injure or destroy the whole. There may, it is true, be a difficulty in applying such a principle as this, and such difficulty appears to exist in the present case. It might perhaps fairly be urged that to prevent the defendant from removing that portion of the trunk of the tree upon his own land—thereby depriving him of the opportunity to build upon it as desired—would be likely to produce a greater irreparable injury to the defendant than such removal and the consequent destruction of the life of the tree would cause the plaintiff, and that therefore the equitable remedy of injunction which is not adapted finally to adjust the rights of the parties should have been refused, and the contestants left to settle such rights in methods pertaining to the legal and not the chancery jurisdiction. We are inclined to think such elements of discretion enter into this matter that we ought not to disturb the conclusion of the trial court upon it. But we think the law is already well settled in this State, as well as elsewhere, and as before stated, that where the branches of a tree extend over an adjacent owner's land, he may lop them off up to the line, even though that were practically to the trunk of the tree. In this case a portion of the trunk is on the defendant's land, and the branch extension of forty to fifty feet, as found, presumably reaches across it. That he should have less right to lop these branches because he owns a portion of the tree than if he owned none of it, appears to us to be unreasonable. The injunction should not extend further than to restrain the defendant from cutting any portion of the trunk and any further cutting of the branches or of the roots than he might lawfully have done had the trunk stood wholly upon the plaintiff's land, but reaching to the defendant's line. If, in fact, the trunk divides itself as the tree extends upwards, into two or more parts, of similar size, with more of a perpendicular than

horizontal extension, each of those parts should be regarded as a portion of the trunk.

In respect to the well, there was, we think, error in the action of the court, both in reference to the admission of evidence and in granting the injunction, whether the latter action be or be not regarded as influenced by such evidence. Concerning the testimony, the plaintiff seeks to justify its reception as being a declaration of the actual vendor at the time of the sale, and cites *Norton* v. *Pettibone*, 7 Conn., 323 ; *Deming* v. *Carrington*, 12 id., 5 ; *Smith* v. *Martin*, 17 id., 400 ; *Ramsbottom* v. *Phelps*, 18 id., 285. None of these cases, however, support his contention. For, waiving the point that the title to the premises now owned by the plaintiff was not at the time of such conversation in the declarant, William Waite, it is evident that the statement to the plaintiff, " that the well went with the house and would be sold to him," was not in its nature a declaration adverse to the declarant's title. It was not an assertion as to his title at all. There was no question then, nor is there now, that the declarant then had title to the land now belonging to the defendant on which the well is situated. It was therefore simply a statement of what interest, or easement, in land not to be conveyed, " belonged to " and " would be sold " with the land to be conveyed. Whether by the legal effect of the deed to the plaintiff, the well, or any right in it, was conveyed to him as an appurtenance or otherwise, is an inquiry to which the evidence under consideration is not relevant. If not so conveyed, whether the plaintiff has, or ever had before waiting so long, a cause of action for the reformation of the instrument, so as to include the well as a part of the grant, is another and distinct question. In this case, however, to which William Waite is not a party; in which no claim for reformation is made, but only the title of the plaintiff as derived from the deed as it stands is counted upon, such inquiry cannot be entered into. Nor would any conceivable answer to it affect the decision of the point as to the admission, in this case, of the evidence now under consideration. There is no claim that the defendant had any notice of this conver-

sation, and its use to impair the title of a *bona fide* purchaser, for full consideration, without notice, actual or constructive, of an adjoining piece of land, is clearly improper. The fact that the defendant derived his title from a quitclaim deed, is entirely immaterial. "In this State, a quitclaim deed is a primary conveyance, vesting in the releasee all the interest, even in fee, which the releasor has so conveyed. As a *conveyance*, it is of as much force as a warranty deed, differing from it chiefly in the superadded covenants, which may operate, by way of estoppel, upon a future acquired interest, or may secure the covenantee against a bad or defective title." *Sherwood* v. *Barlow*, 19 Conn., 476. It might even be said that there is more reason why a releasee in a quitclaim deed should be protected from the operation of secret, unrecorded incumbrances on the property, where he purchased in good faith and for full consideration, than such a purchaser, whose title comes to him accompanied with covenants for his protection.

But, further, in reference to the injunction, there was error. The plaintiff claims the record shows that the well, at the time of his purchase, was appurtenant to the dwelling-house and necessary thereto. We do not so understand the finding. At the time the dwelling was erected, the well was dug and connected with it by pipes. It was used as appurtenant to the house, either by pipes, or by curb and bucket, up to and within a short time previous to the plaintiff's purchase. It was not so used at the time of the purchase. For the last five years of its actual use, the curb and bucket had been employed. At the time of the purchase, that also had been abandoned, and the well was covered by a flagstone. The pipes at that time connected the well with the house. Whether they do so still is not found. The plaintiff has never used the well. The defendant does not intend to destroy it; but the construction of his dwelling-house would cover it. Why should he not so cover it, if he desired? It had already been covered when he bought, and it so remains. It is not found that the well has ever been, or ever is likely to be, necessary or even useful to the plaintiff. If

it ever has been, why has he never used it? If he objects
to its being covered, why did he receive his deed while it
was in that condition? Why has he suffered it to remain so
ever since? But he wishes, or he may, perhaps, wish here-
after to revive the use of the pipe. It is entirely upon his
own land, and reaches a well which the defendant has no
intention to destroy. How, so far as the record discloses,
will the proposed act of the defendant affect him in such
use?

We come now to the question most extensively considered
on both sides in the argument, that in relation to light. The
great practical importance of the subject presented will be
our justification for a somewhat extended examination. By
the common law, in England, the right to light and air over
the land of another could be claimed, in certain cases by
prescription, and in certain others by implication, or what
was called implied grant. If the common law, as to the pre-
scription, ever existed in Connecticut, it does so no longer.
General Statutes § 2970.

But the plaintiff claims that the law as to implied grants
of light and air does exist, and should be recognized in this
State. That doctrine the plaintiff states as follows: " When
a person, having erected a building upon a part of his land,
and having placed therein windows opening upon the other
part of his land, sells the building with the land on which it
stands, the right to the continual use and enjoyment of light
and air through these windows, passes to the grantee by
implication." This asserted rule is a particular instance of
the application of the doctrine of the creation of easements
of various kinds—the principal of which are perhaps ways
and rights of passage by implication,—which doctrine is
said to rest upon the application of the maxims: " A grantor
cannot be allowed to derogate from his own grant," and " A
grantor is presumed to convey, so far as it is in his posses-
sion, whatever is necessary for the reasonable enjoyment of
the thing conveyed." Again, it is said to be based upon the
supposed intention of the parties, as deduced from the sur-
rounding circumstances; the essential element of which is

the situation, relation and condition of the granted and retained portions of the land.

If we assume this doctrine, generally speaking, to be correct, the inquiry arises as to its proper limitations, and to what would be such, in any given case, provided the question of its application arose between the grantee and his grantor who still retained the other portion of the land—there must be added an additional consideration, provided, as in the present instance, such original grantor does not so retain but has afterwards parted with such remaining portion to another person, who is a *bona fide* purchaser for value. The policy upon which our registration laws as to conveyances of real estate is based, would seem to make it essential that in order to claim such easement against such purchaser it must be of a character so evidently necessary to the reasonable enjoyment of the granted premises, so continuous in its nature, so plain, visible and open, so manifest from the situation and relation of the two tracts, as to fairly and clearly indicate to a prospective purchaser of the reserved portion, the intention of the parties to the previous sale that it should remain, and to make such purchaser chargeable with knowledge that the law, based on justice, that equity founded on good conscience, would forbid him, in case of his purchase, so to occupy the lot as to interfere with such easement.

The general doctrine of easements by implied grants, and the grounds upon which it is based, is well stated by this court in *Collins* v. *Prentice*, 15 Conn., 39, 43, in reference to private ways. In speaking of such ways, the court, by WAITE, J., said : " It is well settled, as a part of the common law of England, that if a man having a close, to which he has no access, except over his other lands, sell that close, the grantee shall have a way to it, as incident to the grant. * * * And although doubts have formerly been expressed upon the subject, it seems now to be as well settled, that, if the grantor had reserved that close to himself, and sold his other lands, a right of way would have been reserved. * * * The way, in the one case, in contemplation of law, is granted by the deed ; and in the other case, reserved. And although it is

called a way of necessity, yet in strictness, the necessity does not create the way, but merely furnishes evidence as to the real intention of the parties. For the law will not presume, that it was the intention of the parties, that one should convey land to the other, in such manner that the grantee could derive no benefit from the conveyance; nor that he should so convey a portion as to deprive himself of the enjoyment of the remainder. The law, under such circumstances, will give effect to the grant according to the presumed intent of the parties. A way of this kind is limited by the necessity which creates it." These principles, in reference to private ways—especially the limitation of such easements to cases of actual existing necessity—are further stated in *Pierce* v. *Selleck*, 18 Conn., 321; *Seeley* v. *Bishop*, 19 id., 128; *Woodworth* v. *Raymond*, 51 id., 70.

In Massachusetts, in reference to such ways, it was said in *Buss* v. *Dyer*, 125 Mass., 291: "It is a well established and familiar rule that deeds are to be construed as meaning what the language employed in them imports, and that extrinsic evidence may not be introduced to contradict or affect them. And it would seem that nothing could be clearer in its meaning than a deed of a lot of land, described by metes and bounds, with covenants of warranty against incumbrances. The great exception to the application of this rule to the construction of deeds is in the case of ways of necessity, where, by a fiction of law, there is an implied reservation or grant to meet a special emergency, on grounds of public policy, as it has been said, in order that no land should be left inaccessible for purposes of cultivation. This fiction has been extended to cases of easements of a different character, where the fact has been established that the easement was necessary to the enjoyment of the estate in favor of which it was claimed. In this Commonwealth, grants by implication are limited to cases of strict necessity."

Coming now directly to the subject of the application of this doctrine, or "fiction," to light and air, it was said by GOULD, J., in *Ingraham* v. *Hutchinson*, 2 Conn., 598, in speaking of what are called "ancient lights:" "Besides: to

what *extent* does this privilege, or protection, go, where it actually exists? Does the adjoining proprietor lose all right to erect a building upon his own land, whenever it would, in the least degree, *diminish* the light of a privileged window? Is he precluded from building at a distance of three rods, or one rod, or even at a less distance, from his neighbor's windows? I am not aware, that the rule was ever claimed to extend so far. It goes no further, as I understand it, than to protect windows, which have been long used, from being *obstructed*, or, as it is often expressed, in the books, '*stopped up.*'" But the plaintiff claims that a much broader extension of the rule, in case of an implied grant, was distinctly recognized in this State, in *Bushnell* v. *Proprietors of Ore Bed*, 31 Conn., 150, a case upon which the plaintiff much relied. In that case it appeared that the plaintiff had formerly conveyed to the defendant, an ore bed company, the right in washing their ore upon a small stream that ran through his land, to discharge dirt upon his "meadow lot," lying below upon the stream. A great quantity of dirt accumulated on the meadow lot, filling the bed of the stream and raising the lot above the adjoining land, so that the dirt washed upon the lot spread, and was carried upon the plaintiff's pasture lot adjoining. The plaintiff had owned this lot at the time the deed was given. In holding that the defendants were not liable for any damage to the pasture lot resulting naturally from the discharge of dirt upon the meadow lot, this court, DUTTON, J., said: "A grantor is presumed to intend to convey, so far as it is in his possession, whatever is necessary to the reasonable enjoyment of the thing conveyed. It is well settled law that if the owner of a lot conveys it to another person while there is upon it a dwelling-house with windows opening upon another lot of the grantor, neither he nor his heirs nor assigns can erect a building upon the second lot so near as to exclude the light from the dwelling-house." Now it is evident, as the opinion itself states, p. 157, that the question for discussion in *Bushnell* v. *Proprietors of Ore · Bed* was, what rights were in fact conveyed by the deed? This was a question solely of interpretation,

in which the principles of the doctrine of implied grants, which do not, and have never been claimed to rest upon interpretation of language used, were in no sense involved. The entire discussion of the doctrine, as well as the illustration cited was, therefore, wholly *obiter.* Nevertheless, both the principle and the illustration, although vouching as authority two cases, both of which have been distinctly overruled in almost every American jurisdiction where the question has since arisen, may, we think, fairly be adopted as a correct statement of the law, provided proper care is exercised in construing the terms used; bearing in mind that the presumption against the grantor, that it was not his intention " to convey land in such manner that the grantee could derive no benefit from the conveyance," must be fairly weighed and applied with due regard to the counter presumption, that it could not have been his intention " to so convey a portion as to deprive himself of the enjoyment of the remainder." From this consideration — manifestly just where the effort is to extend by pure implication the language used, and to thus supply what might so easily have been procured to be expressed, if it were intended—it will follow that the word "necessity" and the term "reasonable enjoyment," can have no fixed, arbitrary and unyielding meaning, but must find their explanation in view of the situation of the parties, of the nature, character and adaptability of the property, and in the light of the surrounding circumstances. They should also receive a strict construction, for the reason that such implied easement is an impairment of " the exclusive dominion of every man over his own soil and freehold, now held sacred by our Constitution and laws." *Pierce* v. *Selleck*, 18 Conn., 330. It may be true, as stated in *Bushnell* v. *Proprietors of Ore Bed*, and the true ground of that decision, that " the construction of a deed, if it is doubtful, must be taken most strongly against the grantor." But in the case before us there is no question concerning the construction of language used; no claim that this is doubtful; but the imputation of language never used,

and surely caution and moderation should be exercised in that.

It further must follow, we think, as a corollary from what has already been said, that the doctrine of easements by implied grant—a doubtful exercise of power by the courts in all cases—should, when applied to easements of light, be most cautiously used; and, briefly stated, that in the above quotation the words "exclude the light," should not be regarded as equivalent to "exclude any light." In other words, that "exclude" is not to be held synonymous with *impair*. To borrow the emphatic language of DILLON, C. J., in *Morrison v. Marquardt*, 24 Iowa, 64: "Surely, such an easement, uncertain in its extent and duration, without any written or record evidence of its existence, fettering estates and laying an embargo upon the hand of improvement which carries the trowel and the plane, and, as applied to a subsequent purchaser, against the spirit of our recording acts, and not demanded by any consideration of public policy—surely, such an easement should not be held to exist by mere implication, when such implication originates in no reasonable necessity."

A careful examination of the cases in the United States upon the subject, both those cited in the very able and exhaustive brief in behalf of the plaintiff, and others, justifies the statement that in what we have said we have been in harmony with the views held in the principal American jurisdictions. Wherever the doctrine of easements by implied grants of light and air has been recognized at all, it has been carefully restricted, and no well considered case in this country, at least in recent years, can be found that has gone to the extent, in the application of such doctrine to the facts, to which it would be necessary to go in the present case in order to justify the judgment of the court below.

In *Keats v. Hugo*, 115 Mass., 204, which is a well considered, and may be regarded as a leading case, three actions were tried together. In the principal one, the defendants conveyed to the plaintiff, by warranty deed in the usual form, a certain lot of land with a dwelling-house thereon, situated on the line between the parties, created by said conveyance ;

the lot so conveyed being a part of a larger lot then, and the remainder of which was at the date of the action owned by the defendants. The dwelling-house had windows and a door in that part of the house adjoining the line. After said conveyance, the defendants placed a structure and woodshed on their own land, against said house, within about eight inches of the same. The question was "whether a person who sells a house overlooking land retained by him, thereby deprives himself of the right to build on that land so as to obstruct the passage of light and air to the windows." The court, GRAY, C. J., in the opinion said: " The question being of great practical importance to owners of real estate, and having heretofore been the subject of some variety and conflict of judicial opinion, we have thought this a suitable occasion to review the cases in this Commonwealth, and to refer to the principal ones in other States." The court then proceeds to do this in an exhaustive manner, and concludes by saying: " By nature, light and air do not flow in definite channels, but are universally diffused. The supposed necessity of their passage in a particular line or direction to any lot of land is created not by the relative situation of that lot to the surrounding lands, but by the manner in which that lot has been built upon. The actual enjoyment of the air and light by the owner of the house is upon his own land only. He makes no tangible or visible use of the adjoining lands, nor indeed any use of them which can be made the subject of an action by their owner, or which in any way interferes with the latter's enjoyment of the light and air upon his own lands, or with any use of those lands in their existing condition. In short, the owner of adjoining lands has submitted to nothing which actually encroached upon his rights, and cannot therefore be presumed to have assented to any such encroachment. The use and enjoyment of the adjoining lands are certainly no more subordinate to those of the house where both are owned by one man, than where the owners are different. The reasons, upon which it has been held that no grant of a right to air and light can be implied from any length of continuous enjoyment, are equally

strong against implying a grant of such a right from the mere conveyance of a house with windows overlooking the land of the grantor. To imply the grant of such a right in either case, without express words, would greatly embarrass the improvement of estates, and, by reason of the very indefinite character of the right asserted, promote litigation. The simplest rule, and that best suited to a country like ours, in which changes are continually taking place in the ownership and the use of lands, is that no right of this character can be acquired without express grant of an interest in, or covenant relating to, the lands over which the right is claimed.

"In accordance with these views, the English doctrine of implied grants of rights of light and air has been wholly rejected in several well considered cases. *Palmer* v. *Wetmore*, 2 Sandf., 316; *Myers* v. *Gemmel*, 10 Barb., 537; *Haverstick* v. *Sipe*, 33 Pa. St., 368; *Mullen* v. *Stricker*, 19 Ohio St., 135; *Morrison* v. *Marquardt*, 24 Iowa, 35. And with the single exception of *Janes* v. *Jenkins*, 34 Md., 1, all the opinions of American judges, with which the learning and research of counsel have supplied us, in favor of the acquirement of such a right by mere implication from the conveyance of a house, have been either, as in *Lampman* v. *Milks*, 21 N. Y., 505, 512, *obiter dicta*, or, as in *Robeson* v. *Pittenger*, 1 Green Ch., 57, in those States in which a like right is held to exist by prescription, and therefore of no weight as authority in this Commonwealth. Considering therefore that by the preponderance of reason and of authority no grant of any right of light or air over adjoining lands is to be implied from the conveyance of a house, we have only to apply this rule to the facts of the cases pending before us." Judgment was ordered for the defendants.

The case of *Keats* v. *Hugo* has been quoted with approval and recognized as authority in other States. *Doyle* v. *Lord*, 64 N. Y., 432, was a case where the facts were that the plaintiffs leased the first floor of a building, in the city of New York, for a store. In the rear was a yard attached to and exclusively appropriated for the use of the building, to which all the occupants had access through a hall running from the

front to the rear of the building, and as the building was occupied when the plaintiff leased, no tenant could dispense with it. The rear of the store received light necessary for the transaction of business therein, from windows opening into the yard. In holding that the lessor could, upon the facts found, be restrained from building in the yard, so as to obstruct the light, the court, EARL, J., said: "This conclusion is reached without any departure from what may be called the American doctrine as to light and air, as distinguished from the English common law doctrine, and the law as laid down in the following authorities is fully recognized: *Parker* v. *Foote*, 19 Wend., 315; *Palmer* v. *Wetmore*, 2 Sandf., 316; *Myers* v. *Gemmel*, 10 Barb., 537; *Mullen* v. *Stricker*, 19 Ohio St., 135; * * * *Haverstick* v. *Sipe*, 33 Pa. St., 368; *Keats* v. *Hugo*, 115 Mass., 204. * * * Under these authorities if the lessor had sold the store and lot upon which it stood, twenty-five feet by fifty-one, the grantee would have taken no right to light and air from the balance of the lot. In that case the grantor could have built upon the balance of the lot, and thus have darkened the windows in the store without violating any rights of the grantee. In this case if the yard had not been part of the lot upon which the building was standing and if it had not been appropriated to use with the building so as to pass as appurtenant thereto, so far as to give easements therein to the tenants of the building, the plaintiffs could not have complained of the acts of the defendants alleged in the complaint."

In *Turner* v. *Thompson*, 58 Ga., 268, an executrix sold a half lot of land, with a tenement thereon opening upon the other half lot; and bought the other half herself at the same sale. It was held that she "will be estopped from obstructing the passage of light and air through such windows, if those windows were necessary to the admission of sufficient light and air for the reasonable enjoyment of the tenement which she sold; *aliter*, if sufficient light and air can be derived from other windows opened, or which could conveniently be opened, elsewhere in the tenement to make the rooms reasonably useful and enjoyable." The court, JACKSON, J.,

cites with approval *Keats* v. *Hugo*, *supra*, adding: "The principle applied by the Supreme Court of West Virginia, in a recent case there, seems to us sound and sensible, and we shall adopt it in this case. * * * That principle is, that 'an implied grant of an easement of light will be sustained only in cases of real necessity; and will be denied or rejected in cases when it appears that the owner claiming the easement can, at a reasonable cost, have, or substitute, other lights to his building." The court adds: "We apply this principle the more readily because it appears to be the conclusion of Washburn, (Easements, p. 618), drawn from a consideration of all the English and American authorities, and because, as before stated, it strikes us as reasonable and right. * * * So Tyler approved the same principle—Tyler on Boundaries, etc., 550; and JUDGE STORY is authority to the same point— 1 Sumner, 492–502." In this case the injunction granted was dissolved, because the "decree, as it stands, might be held to enjoin her from building, if these lights were at all impaired; and we think such action ought not to be had except in case of necessity as before explained."

In *Rennyson's Appeal*, 94 Pa. St., 147, 152, both *Keats* v. *Hugo* and *Turner* v. *Thompson* are cited and approved, the opinion saying of the latter: "It is worthy of remark, however, that this case limits the general application of *Keats* v. *Hugo* as between dominant and servient tenement in one important respect. I think the limitation is wise and right. It is, that an implied easement of light and air will be sustained in case of real necessity." The opinion then proceeds to lay down the following rules: "1. No implication of a grant of the right to light and air arises upon a sale of one of two adjacent lots having a house upon it, with windows overlooking the land of the grantor. 2. The grantor, by such sale, is not estopped from improving his retained lot by building upon it, though his erection darkens the windows of his vendee, and excludes the access of light and air from such windows. 3. That the limitation of these two propositions depends upon the fact as to whether such windows are a real necessity for the enjoyment of the grantee's property.

If they be, then the implication of the grant of an easement of light and air will be sustained; if they be not, or can be substituted at a reasonable cost, with a view to the purposes of the dominant tenement, then such implication will be denied and rejected. 4. The American doctrine as to light and air requires an express grant or agreement, unless a real and actual necessity exists, to vest a dominant tenement with such light. 5. The doctrine of ancient lights is not recognized."

A somewhat earlier case than those just cited is that of *Morrison* v. *Marquardt*, 24 Iowa, 35, to which reference has already been made, and in which a very elaborate opinion was written by DILLON, C. J., and strong ground is taken against the implication of an easement of light and air, except in cases of strictest necessity. See also *Sutphen* v. *Therkelson*, 38 N. J. Eq., 318; *White* v. *Bradley*, 66 Me., 254; *Brande* v. *Grace*, 154 Mass., 210, 212, where, in case of a plaintiff lessee, held entitled to a remedy, the court said: "We do not regard this view of the rights of the parties as at all inconsistent with the decision in *Keats* v. *Hugo*, 115 Mass., 204, and other cases, which hold or intimate that the necessity must be pretty plain in order to warrant the implication of a grant." See also, *Case* v. *Minot*, 158 Mass., 577, a case similar to *Doyle* v. *Lord*, *supra*, to which it refers.

Applying these principles to the case before us, what result is fairly reached? Here was a lot located on Bradley street about six blocks from the center of the city of New Haven, with a frontage of sixty-one feet, and a depth of ninety-eight feet. A dwelling-house stood upon the westerly part of said lot. The plaintiff purchased said westerly part, forty feet frontage, with said dwelling-house thereon; that left the grantor a lot twenty-one feet front, which shortly afterwards was sold to the defendant. If we are to go into the business of raising presumptions, as we must to support implied grants, it is fair to suppose the plaintiff did not pay the price and value of the sixty-one feet lot, for his forty feet lot. But it would have been just for him to have done so, provided he intended to avail himself of the only beneficial

use of it—keeping it open and unoccupied, in order to have no obstruction to the light of his sitting and dressing-room derived from his bay-window. It is also fair to presume that his grantor would not have sold a portion for a less price than the whole, provided the remainder was thereby to become practically useless to him; and if he had charged the price of the whole, for a portion, would not the plaintiff have insisted upon taking the whole instead of a portion only? But the grantor would not have sold a portion only, unless the part retained was beneficial to him. But in what could any substantial benefit from such a lot consist, unless it could be built upon? And if building was contemplated, there could be little question, apparently, in view of the narrowness of the lot that such building would require to extend substantially to both sides of the ground. The fact that the plaintiff purchased land extending five feet beyond the east face of his bay-windows, and from ten to eleven beyond that of his house, is significant. Such additional width of five feet would evidently have been useful to a twenty-one foot lot. But the plaintiff purchased it, thereby giving himself, in fact, whatever his purpose may have been, a strip of that width, upon which no structure could be constructed without his act, to either exclude or impair his light. When the defendant who lived near and was fully acquainted with the property bought, what was the evident situation? He found a narrow, vacant lot, adapted to the purposes of building, presumably to no other use; the plaintiff's house, itself upon a lot so narrow that it extended nearer to the opposite side of the lot than to the side in question, on which there were five feet clear, beyond the uttermost extension in a bay-window, which projected five or six feet from the side of the house. Could any one purchasing property under such circumstances have supposed that it was the intention of the parties in making and accepting the grant of the portion of the original premises which had been conveyed to the plaintiff, that there should go with such premises, by implication—by implied grant—a right in the remaining portion of such premises,

paramount to and preventive of their beneficial use and enjoyment? We think not.

Should the defendant, then, have been enjoined from the acts proposed? His intention was to build a dwelling-house to extend down along the boundary line, for a distance of fifty-eight feet from a point about six feet from Bradley street, the wall of which was to be about twenty feet high. It is found by the court that " the erection of said dwelling-house would deprive the plaintiff of the supply of light which has come across said twenty-one feet, now owned by the defendant, and would make it necessary for the defendant to light his sitting-room and dressing-room with gas or some other light in the day-time, in order to obtain sufficient light for the reasonable use of the rooms." This is a finding of fact which we are not at liberty to review. But we have the right, and it is our clear duty to interpret the language, so far as the same, by reason of indefiniteness, requires interpretation, by the aid of those facts which pertain to that common and general fund of knowledge and information which belongs to the domain of things of which all courts are bound to take judicial notice. By this assistance, it becomes evident that the depreciation of light which would ensue from the intended act of the defendant is far from total. The plaintiff would not only be left with so much light as would come from the unobstructed space between the buildings, including the additional space covered by the northeastern and southeastern sides of his bay-window, to which he could add by putting in windows elsewhere or differently constructed ; he would also have the light from overhead, beyond the top of a wall twenty feet high; and as to his dressing-room on the second story of his house, which does not extend so far eastward into several feet as the sitting-room bay-window projection, the angle in which the light would be admitted would seem to be such as to make the obstruction comparatively small. It seems to us, therefore, that the proposed act of the defendant would be, in view of all the circumstances, an interruption of light to the plaintiff to the extent of that which is convenient only, not to that which is neces-

sary for the reasonable enjoyment of his dwelling. Indeed, that enjoyment is not reasonable which deprives the defendant of any use of his property, in order merely that the plaintiff may, by reason of such deprivation, have a more comfortable, convenient and better use of his own. In view of the facts found, as we interpret the finding, we conclude that an injunction could not have been granted had not the trial court adopted what we hold to be the wrong standard, substituting convenience for necessity as the test by which to determine the existence of the right claimed. In this respect also the court erred.

The court also erred in granting an injunction in so indefinite terms. It is impossible to lay down any precise rule of universal application upon the subject. But the person enjoined is entitled to know with reasonable certainty what acts he may and may not do without making himself liable as in contempt of an order. In reference to light, it was the claim of the defendant throughout—a claim which we are not at liberty to say was not made in good faith—that the erection intended to be made by him would not be of such a character, or "so near as to exclude the light from the plaintiff's dwelling-house." This claim the court overruled. But there is nothing in the injunction to indicate whether any erection, or if so, how near, or of what a character, would be permissible. Without endeavoring to state what degree of certainty would have been reasonably practicable under the circumstances, which is unnecessary in view of what we have held upon the other questions in the case, it is sufficient to say that it seems to us the language employed falls short of the degree of definiteness which could without inconvenience be attained, and should be required.

There is error and a new trial is granted.

In this opinion the other judges concurred.