WILLIAM MARSHALL vs. PATRICK H. MARTIN.

First Judicial District, Hartford, October Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

A conveyance of land with "the appurtenances thereof" carries with it an appurtenant right of way.

Necessity does not of itself create a right of way, but it is evidence of the grantor's intention to convey one, and raises an implication of a grant.

The implication of a grant never arises from considerations of mere convenience or economy; there must exist a necessity, either absolute, as in cases where the grantee has no access to his property except across the land of his grantor, or reasonable, as in cases where other means of access, though available, are of such a nature as would not afford the grantee any real beneficial enjoyment of his property.

A reasonable necessity for a right of way does not exist where the grantee can at a reasonable cost, on his own estate and without trespassing upon his neighbors, create a substitute.

Where, as in the present case, it is practicable for the grantee to construct a way across his own estate but only at an expense which exceeds the value of all his land, the necessity is reasonable and a right of way by implication arises.

The legal principles governing the existence of rights of way by necessity are not affected by § 1433 of the General Statutes, authorizing the layout of highways by selectmen.

Argued October 6th—decided November 4th, 1927.

ACTION to recover damages for trespass to real estate, and for injunctive relief, brought to the Court of Common Pleas for Hartford County and tried to the court, *Howard, J.*; judgment rendered defining a right of way in favor of the defendant over a portion of the plaintiff's land and enjoining the defendant from crossing any other portion, from which both parties appealed. *No error on plaintiff's appeal; error on defendant's appeal.*

Defendant owns four contiguous lots, known as the Corbin lot, the Thomas Martin lot, the plow lot and

the wood lot, respectively.  The Corbin lot and the Thomas Martin lot abut on the north upon a public highway.  The plow lot and the wood lot lie south of the Corbin and Thomas Martin lots and have no direct access to the highway.  The plow lot lies west of the wood lot and is bounded on the west by the tracks of the New York, New Haven and Hartford Railroad Company, and to the west of these tracks lies the plaintiff's land, known as the Marshall plot.  Prior to April, 1905, the Marshall, plow and wood lots were all owned by Herman F. and Horace L. Wells, as tenants in common.  By reciprocal deeds and as one transaction they divided these lots, the deeds being dated April 1st and April 4th, 1905.  By the deed of April 1st Horace deeded the wood lot to Herman, the deed containing a grant of "a right of way over and across land of the grantor to grantor's private railroad crossing for the purpose of reaching grantee's land east of railroad, and also the privilege of crossing grantor's land west of railroad from the highway by the path used for that purpose."  By the deed of April 4th, Herman deeded to Horace the plow lot and the Marshall lot with the appurtenances thereof, the deed containing the following: "The said grantor keeps and retains the use and right of way to the said private railroad crossing on said land in going to and coming from his land east of said railroad situated south of and adjoining the land herein described, and also the right of crossing said land west of said railroad to highway in path usually used and traveled by owner of said land, his heirs and assigns forever."

On the same day Herman deeded the wood lot to the defendant, the deed containing no mention of any right of way.  On April 1st, 1908, Horace deeded the Marshall and plow lots to one Ingraham.  On October 31st, 1917, Ingraham deeded to defendant the plow

lot "subject to a right of way of H. F. Wells across the southwest corner," and on October 17th, 1918, deeded to plaintiff the Marshall lot "subject to such passway rights as of record may appear." Defendant acquired title to the Thomas Martin lot on October 26th, 1910, and to the Corbin lot on July 13th, 1912. The land of the Thomas Martin and Corbin lots is low and marshy and access to the highway across these lots from the plow and wood lots is for a large part of the year impracticable without the construction of an expensive way, which is practicable but would cost more than the value of all the defendant's holdings. The highway abutting the Thomas Martin and Corbin lots has in the elimination of two grade-crossings been raised above the level of the lots so that the construction of a way to the wood and plow lots would entail expensive grading. The defendant has collected damages from the county for this change of grade, part of which were founded upon his loss of access to his land. The defendant claims a right of way by deed over plaintiff's land to his wood lot and a right of way by necessity to both the wood lot and the plow lot. The trial court held that defendant had a right of way by deed to the wood lot, but no right of way by necessity to the plow or wood lots, and both parties appealed.

*Frederick B. Hungerford,* for the appellant (plaintiff).

*Arthur Perkins,* with whom was *Roger Wolcott Davis,* for the appellant (defendant).

BANKS, J. Plaintiff appeals from the court's refusal to find certain facts as stated in his draft-finding and counter-finding which he claims were material upon the question of intention of the parties as to whether or not a right of way passed to defendant under the

deed from Herman F. Wells. He claims that the court erred in ruling that the surrounding circumstances were not material to the question of intention. The court did not so rule. Evidence of the surrounding circumstances was received. The facts which plaintiff sought to have added to the finding are either already incorporated in it in other language or are not such that they would affect the result if we should make the correction desired.

In the deed of April 1st, 1905, Horace Wells, plaintiff's predecessor in title, specifically granted to Herman Wells a right of way over the former's land for the purpose of reaching the latter's land east of the railroad, which was the so-called wood lot. On April 4th, 1905, Herman Wells deeded the wood lot to the defendant. The deed contained no reference to any right of way, but had the usual habendum clause: "To have and to hold the above granted and bargained premises with the appurtenances thereof." This deed conveyed the easement of passage over plaintiff's land as an appurtenance of the land described therein. *Blanchard* v. *Maxson,* 84 Conn. 429, 80 Atl. 206; *Peck* v. *Mackowsky,* 85 Conn. 190, 82 Atl. 199; *Alling Realty Co.* v. *Olderman,* 90 Conn. 241, 96 Atl. 944; *Schroeder* v. *Taylor,* 104 Conn. 596, 134 Atl. 63. The finding, even if corrected in accordance with the plaintiff's request, would contain no facts justifying a conclusion that there was no intention on the part of Herman Wells to convey a right of way to the defendant. There is no error on the plaintiff's appeal.

It is claimed upon defendant's appeal that the court erred in holding that defendant had no right of way of necessity over plaintiff's land to the plow lot and the wood lot. In view of the holding that defendant had a right of way by deed to the wood lot, it is only necessary to discuss the question of whether he had a right

of way by necessity to the plow lot. Such right arises, if at all, from the deed of Ingraham to the defendant dated October 31st, 1917. On that date Ingraham owned both the Marshall lot and the plow lot and deeded the plow lot retaining the Marshall lot. While these two lots were owned by Ingraham there was no access to the plow lot from the highway except across the Marshall lot. Therefore when Ingraham sold the plow lot to the defendant retaining title to the Marshall lot, the latter (if he had no other means of access) obtained a right of way of necessity, or more accurately by implication, over the Marshall lot to the plow lot.

"The basis of this right is the presumption of a grant arising from the circumstances of the case. Necessity does not of itself create a right . . . but it is evidence of the grantor's intention to convey one, and raises an implication of a grant." 9 R. C. L. 768; *Collins* v. *Prentice*, 15 Conn. 39; *Myers* v. *Dunn*, 49 Conn. 71.

At the time, however, that defendant acquired the plow lot he owned the Corbin and the Thomas Martin lots, both of which abutted upon the highway. The Corbin lot lay between the plow lot and the highway and the defendant had access to the plow lot from the highway either across the Corbin lot alone or by crossing both the Corbin and the Thomas Martin lots. Having such means of access to the plow lot over other land of his own, the defendant could not ordinarily claim a right of way by necessity over plaintiff's land since no such necessity existed. It is the defendant's claim, however, that because of the peculiar nature of the Corbin and Thomas Martin lots, access to the highway across those lots was impossible except at prohibitive expense and therefore there existed a reasonable necessity for access to the plow lot over plaintiff's land.

This raises the question, as stated in defendant's brief, whether the necessity required to create a way of necessity must be absolute, without regard to the difficulties of the ground or the expense of obtaining it, or whether it is only a reasonable necessity taking into account all the elements of the situation. The basis of the right is the presumption of a grant arising from the circumstances of the case. If the situation is such that the landowner has absolutely no access to his property except across the land of his grantor, the presumption is clear and the right undoubted. If he has such access over other land of his own, the mere fact that such access is inconvenient or expensive will not raise the presumption of a grant of a more convenient way over the land of his grantor. It may be, however, that while access to the property is not absolutely cut off, the circumstances of the case are such that the means of access available would not afford the landowner any real beneficial enjoyment of his property. Such a situation would arise when the expense of making the means of access available would exceed the entire value of the property to which access was sought. Such a means of access would be no better than none at all and there would seem to be equal reason for presuming a grant under such circumstances as in the case where there was no access. Although there are cases which hold that the way must be one of strict necessity, the weight of authority supports what seems to us to be the better rule—that the necessity need only be a reasonable one. Jones on Easements, § 315; 9 R. C. L. 770, § 31; 21 R. C. L. 1218, § 13; 19 Corpus Juris, 923; 5 A. L. R. 1557; *Pettingill* v. *Porter,* 90 Mass. (8 Allen) 1; *Hart* v. *Deering,* 222 Mass. 407, 111 N. E. 37; *Davis* v. *Sikes,* 254 Mass. 540, 546, 151 N. E. 291; *Crotty* v. *New River & Pocahontas Consol. Coal Co.,* 72 W. Va. 68, 78 S. E. 233, 46 L. R. A. (N. S.) 156.

It has been said that the test of necessity is whether the party claiming the right can at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute. *Watson* v. *French,* 112 Me. 371, 92 Atl. 290; L. R. A. 1915C, 355, 357. In most of the cases which have held that a way of necessity does not exist when a man can get to his own property through his own land, the way was sought on the grounds of convenience and economy only. In a note in 17 L. R. A. (N. S.) 1019 upon the subject of ways of necessity when other possible modes of access exist, the commentator says: "Although in a number of cases it is said that only a strict necessity can give rise to such an implication [of a right of way], it would seem that such expression is used as the antithesis of implication arising from convenience, and it is believed that no case has actually gone so far as to deny a way by necessity on the ground that another possible mode of access . . . could be made available only at a wholly disproportionate expense."

The trial court cited *Pierce* v. *Selleck,* 18 Conn. 321, as disapproving the enlargement of the law of ways of necessity and stated that it felt bound by that decision. In that case A conveyed a tract of land, except a small wood lot, to B, under whom the plaintiff claimed. After the conveyance, A had no other means of access to the wood lot than over the *locus in quo.* He then sold the wood lot to C, under whom the defendant claimed. A new highway was afterward laid out across the wood lot, but it was not convenient for the defendant to use it in conveying wood to his dwelling as the distance was greater than across the *locus in quo.* The court held that upon the laying out of the new highway, the defendant's necessity. ceased and with it his right of way, stating that to hold otherwise would have involved giving him a way of convenience which the law

did not sanction.  In *Myers* v. *Dunn, supra,* the owner of a tract of land bounded by a highway on the east and another on the west, sold a lot on the west side reserving a right of way from the center lot to the west highway "for the purpose of carting wood."  He afterward sold the center lot retaining the lot fronting on the easterly highway.  The court held that the owner of the center lot was not debarred from a way of necessity to the east highway by reason of the limited right of way by deed to the west highway which did not secure to him "the most beneficial enjoyment of his grant." The court said (p. 78): "Upon the conveyance of the piece of land inaccessible except for a single purpose, . . . the law instantly laid in its favor upon the *locus in quo* the burden of an unlimited way of necessity for all legal uses."  This case has been frequently cited as supporting the more liberal rule that a way by necessity will be implied in a grant where the grantee would otherwise be deprived of the beneficial enjoyment of the property granted.

The finding here stated that, by reason of the character of the land of the Thomas Martin and Corbin lots, the construction of a way from the highway to the plow lot would entail far more expense than the value of all the defendant's holdings.  Such means of access to the plow lot is obviously without value and does not secure to the defendant the beneficial enjoyment of the lot, since to obtain it would cost more than that lot and all his other holdings are worth.  If the cost of obtaining access to one's land is greater than the value of the land, he is no better off than if the land were quite inaccessible, and the presumption of a grant in such a case would seem to be quite as strong as in the case where there is no access whatever to the land conveyed except over the land of the grantor.

The existence of a way by necessity from the plow lot

across plaintiff's property is not affected by the statute, General Statutes, § 1433, authorizing the layout of highways by selectmen. *Collins* v. *Prentice,* 15 Conn. 39, 45. Upon the facts found the defendant has a right of way by necessity from his plow lot across the Marshall lot.

The court erred in admitting in evidence certified copies of deeds, the originals or certified copies of which were already in evidence, the avowed purpose for which they were offered being to increase the costs to be taxed in favor of the plaintiff if he should prevail. That portion of the judgment which enjoined the defendant from crossing the plaintiff's land in going to and from the Corbin and Martin lots was erroneous, such relief not being sought in the complaint and the defendant admitting that he had no such right.

There is no error upon the plaintiff's appeal. There is error upon the defendant's appeal and the cause is remanded to the Court of Common Pleas for judgment in accordance with this opinion.

In this opinion the other judges concurred.