MAX L. RISCHALL ET AL. *v.* WILLIAM C. BAUCHMANN.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued January 8—decided April 4, 1946.

*Lewis J. Somers,* for the appellant (defendant).

*Harry R. Cooper,* with whom was *Harry W. Edelberg,* for the appellees (plaintiffs).

BROWN, J. The plaintiffs by this action sought to enjoin the defendant from interfering with their use of a concrete walk leading from their house across the defendant's intervening land to the westerly sidewalk of Broad Street in Meriden. The plaintiffs claim that the sale to them of this residence property by the common owner, prior to his sale of the intervening property to the defendant, was made under circumstances which created an easement by implied grant entitling them to use this existing concrete walk, their only means of access to Broad Street. From judgment in their favor the defendant has appealed.

The facts established by the court's finding, in so far as material, may be thus summarized: In 1907 Ethel Yale Meyers owned an undivided tract of land

at the southwesterly corner of Broad and Liberty Streets in Meriden. A house known as No. 562½ Broad Street was located on the southwesterly portion of the tract. It faced easterly toward Broad Street, and a concrete walk three feet wide and approximately one hundred and two feet long extended from its front entrance to Broad Street. This same condition had existed for a number of years before Mrs. Meyers acquired the property. When the house was built, the then owner of the entire tract set aside a strip of land five feet wide, extending from the front of the house to Broad Street, as the only way for passing back and forth between them, and constructed thereon the walk above mentioned to serve this purpose. Because of the topography of the land and the surrounding circumstances, the common owner expressly created a quasi easement to use the strip of land as a more convenient way appurtenant to the house No. 562½ for its better enjoyment.

The Meriden Savings Bank succeeded to Mrs. Meyers' ownership by foreclosure on February 12, 1932. On November 18, 1941, a map showing a subdivision of the property, prepared by a civil engineer upon the bank's order, was filed in the office of the town clerk of Meriden. This map shows the land, including an additional adjoining piece on Liberty Street owned by the bank, divided into four plots, designated as Lots No. 1, 2 and 3 and Plot A. Lot No. 1 is the northeasterly portion at the corner of Broad and Liberty Streets. Plot A, on which the three-foot concrete walk is located, is five feet in width throughout, adjoins the south side of Lot No. 1, and extends back approximately one hundred and two feet from Broad Street. The northerly side of Lot No. 3 is contiguous to the southerly side of Plot A. Lot No. 2, on which the house No. 562½ stands, adjoins Lot No. 1, Plot A

and Lot No. 3 on the west and has a frontage of fifty feet on Liberty Street.

On January 6, 1942, the bank conveyed to the plaintiffs by quitclaim deed, recorded the same day, "a certain piece or parcel of land, with the buildings thereon, situated in the City of Meriden, known as No. 562½ Broad Street, also known as Lot #2 on a map of 'Property of Meriden Savings Bank, Broad and Liberty Street, Meriden, Connecticut,' made by H. E. Daggett, C. E. dated October 1941, which map is on file· in the office of the City Clerk of Meriden." A part of the description was: ". . . bounded . . . Northerly by Liberty Street, 50 feet; Easterly by Lot #1 as shown on said· map, 70.52 feet; by Plot 'A' as shown on said map,·7 feet; and by lot #3 as shown on said map, 66.5 feet." The deed contained the habendum "To have and to hold the premises with all the appurtenances, unto the said releasees their heirs and assigns forever." At no time prior to the payment of the purchase price by the plaintiffs and the delivery by the bank of the deed and the map was there any discussion concerning the use of the concrete walk. · Since this conveyance, the plaintiffs have continued to own the property. On September 14, 1942, the bank conveyed to the defendant by quitclaim deed the "parcel of land with buildings thereon . . . known as Lot #1 and Plot A on a map," which was specifically referred to in the same language employed in the deed to the plaintiffs. The property conveyed was bounded "Southerly by Lot #3 as shown on said map, 101.8 feet, and Westerly by Lot #2 as shown on said map, 77.52 feet." The defendant has ever since been the owner of this property. The surface of the ground along the north side of the plaintiffs' house is from ten to eleven feet higher than their land where it abuts the southerly sidewalk of Liberty Street, and forty-five feet back from the ·

street a terrace extends across the lot from east to west. A fairly large maple tree stands just north of the plaintiffs' front veranda on the east side of the house, and there are shrubs immediately north of the steps leading to this veranda.

Plot A at its westerly end is practically level with Lot No. 2, and at its easterly end with Broad Street. The plot has been used as a means of access to and from what is now the plaintiffs' home, openly and continuously, since sometime prior to 1907, and this use has been reasonably necessary for the fair enjoyment of the plaintiffs' property. At the time the five-foot strip, later designated Plot A, was originally set aside as a means of access to Broad Street, it was expressly created as a more convenient appurtenance to the dwelling No. 562½. The plaintiffs have occupied their property continuously since 1932, having been tenants prior to acquiring title, and during all of the time have enjoyed this use of Plot A freely and without molestation. No easement over Plot A was either established or needed for the benefit of either Lot No. 1 or Lot No. 3, nor was the walk designed to serve either of those properties. The easement over Plot A was, however, purposely made an appurtenance to the dwelling now owned by the plaintiffs and it persisted as such after the subdivision made by the bank. At the time this easement was created, the bank as common owner had sufficient frontage on Liberty Street to permit it to construct a means of access from that street, but it saw fit not to do so. The plaintiffs believed that they were acquiring the easement to Broad Street by the bank's deed to them. Prior to the purchase by the defendant of Lot No. 1 and Plot A he examined the premises, saw the physical conditions and the use to which Plot A was put, and had actual knowledge of the use made of it by the plain-

tiffs. On April 25, 1945, the defendant attempted to assume complete dominion over Plot A by the erection of a barrier along its south and west boundaries to exclude the plaintiffs from any further use of it.

The defendant by his assignments of error has attacked the court's conclusions on the ground that they are not supported by the subordinate facts. The conclusions decisive of the case were that (1) under the existing circumstances, in accord with the intent of both parties, the deed from the bank to the plaintiffs created by implication an easement of access by the existing walk between the property conveyed and Broad Street which was a reasonably necessary appurtenance for the fair enjoyment of the dwelling upon the conveyed premises; (2) this easement has never been extinguished; and (3) the defendant by his interference with it has committed a violation of the plaintiffs' rights which entitles them to injunctive relief. Judgment for the plaintiffs was entered accordingly. The primary question for determination is whether the deed by the bank to the plaintiffs was effective to create the easement of access by implication.

In so far as the court's first conclusion is one of fact, it is supported by the subordinate facts. Whether the further conclusion that an easement was created by implication is correct is to be tested by this controlling principle, expressly approved by this court: "'Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of

the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made.' *John Hancock Mut. Life Ins. Co.* v. *Patterson,* 103 Ind. 582, 586, 2 N. E. 188." *Slachter* v. *Olderman,* 116 Conn. 156, 158, 164 Atl. 202; 1 Thompson, Real Property (Perm. Ed.), § 337 and cases cited. While the necessity involved in the *Slachter* case may be characterized as more urgent than here, there is ample authority that in so far as necessity is significant it is sufficient if the easement is "highly convenient and beneficial" for the enjoyment of the portion granted. 1 Thompson, op. cit., § 339; *Keen* v. *Bump,* 310 Ill. 218, 141 N. E. 698; *Heffley* v. *Lohr,* 149 Pa. Super. 586, 590, 27 Atl. (2d) 275; *Wilson* v. *Glascock,* 74 Ind. App. 255, 126 N. E. 231; *Ferrell* v. *Trust Co.,* 221 N. C. 432, 435, 20 S. E. (2d) 329; *Hammond* v. *Ryman,* 120 Va. 131, 90 S. E. 613; *Teachout* v. *Duffus,* 141 Iowa 466, 119 N. W. 983; *Dinneen* v. *Corporation,* 114 Md. 589, 594, 79 Atl. 1021; notes, 34 A.L.R. 233, 234, 100 A.L.R. 1321, 1323; 17 Am. Jur. 948, § 34; id., p. 954, § 44. In so far as the language in *Blakeman* v. *Blakeman,* 39 Conn. 320, 325, is inconsistent herewith, it is overruled. The reason that absolute necessity is not essential is because fundamentally such a grant by implication "depends on the intention of the parties as shown by the instrument and the situation with reference to the instrument, and it is not strictly the necessity for a right of way that creates it." 2 Thompson, op. cit., p. 84; *Marshall* v. *Martin,* 107 Conn. 32,

36, 139 Atl. 348. The court's first conclusion was fully warranted.

The fact that in the instant case the word "appurtenances" appeared only in the habendum of the deed to the plaintiffs and was not used in the granting clause, as in the *Slachter* case, does not require a contrary decision, as urged by the defendant. It is true that, while the habendum may "sometimes . . . enlarge the *estate* granted," it can never enlarge *"the subject matter* of the grant." *Manning* v. *Smith*, 6 Conn. 289, 292; *Whiting* v. *Gaylord*, 66 Conn. 337, 349, 34 Atl. 85. The omission of the word "appurtenances" from the granting clause here, however, was immaterial, for since the grant was one by implication, mention of it in the granting clause was unnecessary. There can be no doubt that the court's further conclusion that the easement for the benefit of the plaintiffs' land had not been extinguished was warranted, since the defendant had actual knowledge of it when he purchased Lot No. 1. That the defendant's interference with the plaintiffs' use of the walk was a violation of their right entitling them to relief according to the court's discretion, as held in the court's third conclusion, is established by its correct determination of the other two.

Error is assigned in the court's rejection of oral testimony and of a letter purportedly written by the bank to the plaintiffs, offered to prove that it did not intend to convey to them the easement in question. The basis of an easement by implication is the presumption of a grant arising from the circumstances of the case. *Marshall* v. *Martin*, supra. "The presumption, however, is one of fact and whether or not the grant is to be implied in a given case depends upon the terms of the deed and the facts in that case." *Doten* v. *Bartlett*, 107 Me. 351, 354, 78 Atl. 456; 17

Am. Jur. 961. An express contrary provision in the deed itself may preclude such presumption. *Simonson* v. *Goldberg,* 338 Ill. 420, 424, 170 N. E. 252; and see *Myers* v. *Dunn,* 49 Conn. 71, 78. A separate written agreement may have like effect. *LaPlant* v. *Schuman,* 197 Iowa 466, 473, 196 N. W. 280. Since the presumption is raised by parol evidence, however, it may also be rebutted by the same character of evidence. *Lebus* v. *Boston,* 107 Ky. 98, 107, 51 S. W. 609, 52 S. W. 956; see 3 Greenleaf, Evidence (16th Ed.), § 366; 2 Wharton, Evidence (3d Ed.), § 974. The principle underlying the creation of an easement by implication is that it is "so evidently necessary to the reasonable enjoyment of the granted premises, so continuous in its nature, so plain, visible and open, so manifest from the situation and relation of the two tracts" that the law will give effect to the grant according to the presumed intent of the parties. *Robinson* v. *Clapp,* 65 Conn. 365, 384, 385, 32 Atl. 939. Consequently, in determining whether an easement by implication exists, statements by the grantor to the grantee made prior to the consummation of the transaction to the effect that a license and not an easement is to pass by the conveyance are admissible. *McPherson* v. *Acker,* MacArth. & Mack. (11 D. C.) 150, 159, 48 Am. Rep. 749, 752.

It follows from what we have said that testimony of the nature rejected by the court, as above stated, might be admissible to establish that there was no easement by implication. The finding, however, does not show what the oral testimony was. While the letter states in effect that the bank was granting a revocable license to the plaintiffs to use the walk, and not an easement, there is nothing in the finding to show when the letter was delivered to the plaintiffs or in fact that it was ever so delivered. Thus the

finding fails to set forth the facts essential under the rules to a determination of the correctness of the court's ruling; Practice Book, § 359, Form No. 646; *State* v. *Lougiotis,* 130 Conn. 372, 375, 34 Atl. (2d) 777; *Deacy* v. *McDonnell,* 131 Conn. 101, 106, 38 Atl. (2d) 181; *Armstrong* v. *Dolge,* 130 Conn. 516, 519, 36 Atl. (2d) 24; and it was the duty of the defendant to see to it that the finding was sufficient. *Foust* v. *May,* 98 Conn. 163, 165, 119 Atl. 47; Conn. App. Proc., § 87. It may be observed, however, that upon the plaintiffs' objection that this parol evidence was inadmissible to vary the effect of the deed to them the court overruled the objection and admitted the evidence, subject to rejection later if it became convinced that the ruling was erroneous. Unless both parties agreed, which does not appear, the course so adopted by the court was improper. General Statutes, § 5646. When it decided the case several weeks later, the court reversed its ruling, rejected the evidence and allowed an exception to the defendant. Under the circumstances, notwithstanding the defendant's failure to see to it that the court's ruling was properly presented for review upon the present appeal, as required by the rules, a majority of the court conclude that, in view of the possible significance of the evidence and of the manner of its exclusion, the defendant should be given another opportunity to offer it in the trial court.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion JENNINGS, ELLS, and DICKENSON, Js., concurred.

MALTBIE, C. J. (concurring). I agree with the opinion except as to the reasons given for a conclusion

that there was error in the ruling upon evidence, and I agree with that conclusion. The opinion demonstrates the materiality of the evidence if it was admissible. It is our established procedure that in passing upon the exclusion of evidence we ordinarily consider only the objections which were made to it at the trial. Conn. App. Proc., p. 61. The plaintiffs made no objection based on the lack of proof of sufficient circumstances to make the evidence relevant to a determination of the rights of the parties, but did in effect claim that its admission would be in violation of the parol evidence rule. As the opinion holds, the question presented is the construction of the deed given to the plaintiffs and the effect of the evidence would be, not to alter or amplify its provisions, but to determine their meaning. To consider the evidence for such a purpose would not be a violation of the parol evidence rule. *Maltby, Inc.* v. *Associated Realty Co.*, 114 Conn. 283, 289, 158 Atl. 548; *In re Curtis-Castle Arbitration*, 64 Conn. 501, 514, 30 Atl. 769; 2 Jones, Evidence (4th Ed.), p. 824.