KATHERINE KRUKOWSKI v. TOWN OF GLASTONBURY

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 76598

Memorandum filed November 3, 1948.

*Frederick J. Rundbaken,* of Hartford, for the Plaintiff.

*J. Ronald Regnier,* of Hartford, for the Defendant.

INGLIS, J. This is an action to restrain the town of Glastonbury from turning water onto the plaintiff's land and for damages.

The plaintiff owns a piece of land in the town of Glastonbury which can best be described as three pieces. The main piece is bounded on the north by Hebron Avenue and has a frontage on that street of about 210 feet. Its depth is about 400 feet. The second portion is a lot 53 feet in front on Hebron Avenue and 150 feet in depth, lying next west of the first piece. The third piece is a strip of land 32 feet wide extending from the southwest corner of the large piece westerly to Sycamore Street.

It appears from the deeds that prior to 1913 all of the plaintiff's land was a portion of and the northwest corner of a much larger tract owned by Charles G. Rankin and Delbert Evans. Through this tract from west to east, in a line substantially parallel to Hebron Avenue and about 150 feet south therefrom, ran a swale into which drained the surface water from a considerable area to the south and west and from the area on the north at least as far as Hebron Avenue.

Rankin and Evans in 1913 laid out the whole tract as a real-estate development known as Grasmere. They filed a map showing that two streets, to be known as Sycamore and Linden, respectively, should extend through the property southerly

from Hebron Avenue. They thereby dedicated those streets as public highways, that dedication has been accepted by the public, and the streets have been worked by the town. They then proceeded to sell off building lots.

The natural drainage through the swale carried the surface water onto that portion of their land which is now owned by the plaintiff, where it created a swampy condition which extended over onto the land of James M. Rankin, now owned by John and Anna Koros. From there the water drained into a small brook and ran off to the south. In order to carry this drainage water underground, Rankin and Evans installed an eight-inch pipe. This installation commenced at an intake on the westerly side of Linden Street and ran from there in an easterly direction substantially along the course of the pre-existing swale through another intake installed on the westerly side of Sycamore Street, through an intervening lot and onto the land now owned by the plaintiff, where it opened onto the surface about 100 feet westerly of the easterly boundary of Rankin's and Evan's land, which is now the easterly boundary of the plaintiff's land. This pipe was installed probably in 1913 and certainly prior to May 30, 1914.

Most of the land now owned by the plaintiff was conveyed from Rankin and Evans to her former husband, John Siemiski, by various conveyances dated July 7, 1920, October, 8, 1921, and August 4, 1923. The rest of it was conveyed by them to others of her predecessors in title on various dates, the earliest of which, so far as it appears in evidence, was August 19, 1916.

The pipe continued to operate so as to carry surface water onto what is now the plaintiff's land from 1914 to 1941 without change. In 1933 the town installed a hard-surface pavement on Linden and Sycamore Streets, but this did not materially increase the flow of water on the plaintiff's land. In 1941 the plaintiff stopped up the end of the pipe and as a result of that and of negotiations between her and the town, the latter replaced the old eight-inch tile with twelve-inch tile and carried the new pipe farther into the plaintiff's property so that the outlet was about seven feet west of the plaintiff's east boundary. This change was made with the consent of the plaintiff with the expectation that it would result in carrying the water off the plaintiff's land. Since that time, however, the easterly end

of the pipe has become clogged so that the water has forced its way up to the surface of the land, with the result that conditions are about the same now as they were prior to 1942.

In the final analysis, therefore, the situation briefly is this: At the time Rankin and Evans owned the whole tract, they laid the pipe in question from Linden Street through and onto the land now owned by the plaintiff. That the pipe was there was obvious to anyone inspecting the land because of the fact that it opened onto the surface of that portion of the land which is now the plaintiff's property. In that regard the facts are different from those in *Ricci* v. *Naples,* 108 Conn. 19. The installation of the pipe was very apparently intended to be permanent. The purpose of the pipe was to collect surface water from the rest of the land of Rankin and Evans and turn it onto what is now the plaintiff's property. The dedication of the highways, Linden Street and Sycamore Street, was the equivalent of the conveyance to the town of the easement to use those strips for highway purposes. By virtue of the fact that the drainage pipe was already installed, there went along with that conveyance the appurtenant easement to drain the surface water from those strips of land into the pipe and onto the plaintiff's land. This appurtenant easement was an easement by implication to which the plaintiff's present property was the servient tenement. Under such circumstances, when later Rankin and Evans conveyed away the land which now belongs to the plaintiff, that land was subject to the easement by implication even though there was no record in the land records of the existence of it. *Rischall* v. *Bauchmann,* 132 Conn. 637.

Moreover, even though there had been no creation of an easement by implication, the town has acquired the right to continue to turn surface water through the pipe. The town continued to exercise that right from the time of the dedication of the two highways in 1913 or 1914 without interruption down to 1941. It has done so openly and notoriously and adversely to the various owners of the land now owned by the plaintiff. There can, therefore, be no question but that long prior to 1941 it had acquired the easement by prescription.

The town did not enlarge its easement, whether it be an easement by implication or an easement by prescription, by

paving the highways in 1933 or by installing a larger pipe in 1942, because even though the pipe was larger the amount of water discharged through it was limited to the surface water drained from the same area, and that was not increased.

Judgment may enter for the defendant to recover of the plaintiff its taxable costs.