[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATIONS FOR TEMPORARY INJUNCTIONS
On November 10, 1994, the plaintiff in McEachern v. Matranga
Docket No. 31 90 38, Keith McEachern, filed a complaint and an application for a temporary injunction to restrain the defendants, Joseph Matranga and Christina Matranga ("Matrangas"), from constructing a road that bisected McEachern's property. On December 4, 1994, the plaintiffs in Pender v. Matranga, Docket No. 31 91 29, John Pender, Mary Pender, Nancy Simmons and Dorothy Kemp ("Pender") filed a complaint against the defendants, Joseph Matranga, Christina Matranga and Chris Wallace for damages, a declaratory judgment and injunctive relief arising out of the construction of a road by Wallace on behalf of the Matrangas that CT Page 9583 bisected the Pender property.[1] On December 9, 1994, Pender filed an application for an ex parte temporary injunction that was granted by the court (Mihalakos, J.) on that date. The court (Mihalakos, J.) required Pender to file a $10,000 bond in conjunction with the granting of the ex parte temporary injunction. Thereafter, the plaintiffs in both cases presented three days of evidence in support of the institution of a temporary injunction. On April 12, 1995, the court heard final arguments on the plaintiffs' applications for temporary injunctions. On June 20, 1995, the parties filed a stipulation detailing the chain of title to the McEachern, Pender and Matranga tracts. Based on the testimony, the exhibits entered into evidence in the case, the court's physical view of the disputed right-of-way and the stipulation on file, the court has made findings of facts as set forth hereinafter.
The Matrangas own a piece of land overlooking Lake Candlewood in New Fairfield, Connecticut, designated as lot 6 on Plaintiff's Exhibit 6 (Rapp map No. 441). Pender owns what are identified as lots 6A and 7 on the Rapp map and McEachern owns lot 8 on the Rapp map. The Rapp map was filed on December 7, 1953 in the New Fairfield land records. On the Rapp map, there appears a "Wood Road" identified by parallel dotted lines. The "Wood Road" begins at what is identified on the Rapp map as an "Existing Private Road," then passes through lot 6 for a short distance, then through lots 6A, 7 and 8 and ends in the middle of Lot 6. McEachern, Pender and the Matrangas all have frontage on the "Existing Private Road." The Matrangas, however, have very limited access from lot 6 to said "Existing Private Road," due to the steep grade and ledgy nature of the topography, and would like to use the "Wood Road" as a driveway to a house or houses they plan to construct on lot 6.
The Matrangas began to improve the "Wood Road" during the fall of 1994, with the help of a defendant in the Pender case, Chris Wallace, of Wallace Construction. Wallace used an excavator to level and smooth the "Wood Road" until the ex parte temporary injunction was issued. The Matrangas never actually alerted McEachern or the Penders that they planned to excavate through their back yards. During the excavation, large quantities of earth and trees were removed, silt fences were erected on the McEachern and Pender properties and trees were scarred. Much of the excavation was conducted in areas beyond 4 feet of either side of the center line of the "Wood Road." Boulders were moved and placed on the plaintiffs' properties. In response to the CT Page 9584 excavation, McEachern and Pender filed their applications for temporary injunctions to block the Matrangas continued construction of the road. McEachern and Pender argue that the Matrangas' excavation amounted to a trespass and destruction of their properties and the Matrangas argue in response that they have deeded and implied rights to use the "Wood Road."
The properties now owned by McEachern, Pender and the Matrangas all had their genesis from the subdivision of Burton F. Sherwood and Sherwood was the original grantor of the lots owned by McEachern, Pender and the Matrangas. Plaintiffs' Exhibits 1, 2, 3, 4, 5, 14 and 15. The Rapp map depicts the "subdivision of property of Burton F. Sherwood located on the west shore of Lake Candlewood in the Town of New Fairfield." All deeds out from Sherwood made reference to the Rapp map. Plaintiffs' Exhibits 1, 2, 3, 4, 5, 14 and 15; June 20, 1995 Stipulation.
The Pender property was conveyed by Sherwood to David R. Laveson on October 16, 1953. Plaintiffs' Exhibit 15. On April 15, 1971, by way of an executor's deed, the Estate of David R. Laveson conveyed the property to Pender. Plaintiffs' Exhibit 14. Pender's deed contains, in addition to a reference back to the Rapp map, an explicit grant or reservation of an easement to the dominant tenement, lot 6 the Matranga property as follows: "Rights of Grantors, his heirs and assigns to pass and repass for all purposes whatsoever over the existing wood road running through the rear portion of said premises." Plaintiffs' Exhibit 15; Plaintiffs' Exhibit 14.
The Matranga and McEachern chains of title to lots 6 and 8, respectively, are more convoluted. On October 17, 1962, Burton Sherwood conveyed lots 6 and 8 to George and Elana Sherwood. On October 23, 1962, George and Elana Sherwood conveyed lots 6 and 8 to Shirley Bochow. On October 31, 1962, Shirley Bochow conveyed a one-quarter interest in lots 6 and 8 to John Bochow. On the same date, Shirley Bochow conveyed a one-half interest in lots 6 and 8 to Ivan Justinius and Dorothy Justinius. Therefore, as of October 31, 1962, the Bochows and the Justinius' both owned one-half of lots 6 and 8. Stipulation filed June 20, 1995.
Thereafter, lots 6 and 8 were severed from common ownership. On March 7, 1972, the Justinius' sold their one-half interest in lot 8 to Jean Mann. At the same time, the Bochows sold their one-half interest in lot 8 to Jean Mann. There was no mention in the deeds to Mann of any easement for the use of the "Wood Road" CT Page 9585 retained by the Justinius', Bochows, or their successors or assigns. On May 25, 1979, Mann conveyed lot 8 to McEachern. McEachern's deed refers to the Rapp map, which includes the "Wood Road" but, as with the deeds to Mann, makes no explicit mention of any rights of others to pass and repass over the "Wood Road."
The Matrangas claim that they maintain superior rights to McEachern and Pender to use the "Wood Road" to access their property even though the "Wood Road" passes through the McEachern and Pender properties. The Matrangas argue that they maintain superior rights to use the "Wood Road" based on an express reservation of an easement to them in the Pender deed and an implied easement over the McEachern property as a result of the inclusion of the "Wood Road" on the Rapp map and subsequent references thereto in all of the deeds out from Sherwood, his successors and assigns, which reference McEachern was aware of when he purchased the property.
Pender does not dispute the existence of the express easement but argues that the easement, as it existed in 1953, was merely a foot path.
In contravention of the Matrangas' position, McEachern initially contends that since there was no mention in any of the deeds of an easement appurtenant to lot 6, passing through lot 8, in his chain of title, that no easement can exist over his land in favor of the Matrangas. Further, McEachern argues that since the Bochows and the Justinius' conveyed lot 8, the servient estate, before conveying the dominant estate, lot 6, there can be no implied easement. Lastly, McEachern argues that if the court finds that an implied easement exists, the prior use of the road evidenced only the existence of a foot path.
Many individuals provided testimony concerning the use and width of the wood road during the past. The descriptions given by the witnesses for the plaintiffs and the defendants were completely at odds. The Taylor sisters, now Nancy Simmons and Dorothy Kemp, testified that from the 1930's until the 1960's, the "Wood Road" was quite narrow and served as a foot path. Christina Matranga testified that the roadway was used for automobile travel on occasion in the 1960's and 1970's. David L. Ryan, a surveyor for the Matrangas, testified that he traveled up the road in a pickup truck in 1994. There was some testimony as to what the width of the travelled portion of the road was back in 1953 when Burton Sherwood sold the now Pender property to CT Page 9586 Penders' predecessor in title, Laveson. The best evidence of this width, however, is supplied by the Rapp map and the designation thereon, describing the road as "Wood Road" with two parallel dashed lines. Richard Dibble, the plaintiffs' surveying expert, testified that the Rapp map indicated that the width of the road was 7-8 feet when the tolerance on the map of plus or minus 10 percent is figured in. Ryan testified that the Rapp map indicated that the width of the Wood Road was 7-10 feet when the tolerance on the map of plus or minus 10 percent is figured in. Therefore, that testimony from the plaintiffs' and the defendants' experts establishes in the court's opinion that the "Wood Road" was 8 feet in width in 1953.
Further, Dibble testified that a wood road generally is used either to gain access to property or remove timber from property. Moreover, Dibble and Ryan both testified that a walking path is designated on a map as a single dashed line, not a double parallel dashed line. This supports the finding that the "Wood Road" was exactly that, a road, not a foot path as the Taylor sisters had suggested. Dibble also testified that a vehicle could traverse the road in its original condition and that a vehicle may well have been on the road since 1929. Based on this testimony, the court finds that in 1953, the "Wood Road" was 8 feet in width and could be used for limited automobile traffic for purposes of entering the property or removing timber or wood from the property. Therefore, the court finds that excavation activity beyond 4 feet of either side of the "Wood Road" center line exceeded the boundaries of the "Wood Road."
Based on the testimony of Dibble, Ryan, Christine Matranga and the court's physical view of the premises, the court finds that the use of the roadway had changed little over the twenty years that elapsed between the Sherwood sale to Laveson in 1953, and the 1972 sale of lot 8 by the Bochows and Justinius' to Mann, McEachern's predecessor in title. Therefore, the court finds that the width of the "Wood Road" continued to be 4 feet from each side of the center line and that it was used for limited automobile traffic for purposes of entering the property or removing timber or wood from the property.
This matter is before the court for a determination on the application for a temporary injunction. The purpose of a temporary injunction is "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits . . . ." Griffin Hospital v. Commission on Hospitals CT Page 9587Health Care, 196 Conn. 451, 457, 493 A.2d 229 (1985). "`It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstances . . . . [T]he issuance of an injunction rests in the sound discretion of the trial court.'" Anderson v. Latimer Point Management Corporation,208 Conn. 256, 262, 545 A.2d 525 (1988). To prevail on an application for a temporary in junction, the burden is on the applicant; Hartford v. American Arbitration Assn. 174 Conn. 472,476, 391 A.2d 137 (1978); to establish (1) a reasonable degree of probability of success on the merits; (2) irreparable harm with no adequate remedy at law; and (3) the harm likely to be suffered by the applicants is greater than that which will result in the interference occasioned by an injunction. See Griffin Hospital v.Commission on Hospitals Health Care, supra, 196 Conn. 457-58; see also Walton v. New Hartford, 223 Conn. 155, 167,612 A.2d 1153 (1992). Injunctions are liberally granted in cases of continuing trespass. Walton v. New Hartford, supra, 166, citingHartford Rayon Corporation v. Cromwell Water Co., 126 Conn. 194,199, 10 A.2d 587 (1940). "`The scope of a temporary injunction will depend on the nature of the case, the evidence presented in the hearing and the relief sought.'" Emhart Industries, Inc. v.Amalgamated Local Union 376, 190 Conn. 371, 407, 461 A.2d 422
(1983).
In order to determine whether the plaintiffs are entitled to a temporary injunction, the court must first determine the existence and scope of the easements that the Matrangas maintain over the McEachern and Pender properties.
There is no express reservation in the McEachern deed or chain of title, therefore, the only method, under the facts presented, by which Matranga can prove an easement is by implication. An easement created by implication is established "[w]here, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same CT Page 9588 condition in which it appeared and was used when the grant was made." (Internal quotation marks omitted.) Rischall v. Bauchmann,132 Conn. 637, 642-43, 46 A.2d 898 (1946). The necessity required is not an "absolute" necessity, rather, all that is required is that the "easement is `highly convenient and beneficial' for the enjoyment of the portion granted." (Citations omitted.) Id., 643.
Further, "[t]he principle underlying the creation of an easement by implication is that it is `so evidently necessary to the reasonable enjoyment of the granted premises, so continuous in its nature, so plain, visible and open, so manifest from the situation and relation of the two tracts' that the law will give effect to the grant according to the presumed intent of the parties." Rischall v. Bauchmann, supra, 645, quoting Robinson v.Clapp, 65 Conn. 365, 384-85, 32 A. 939 (1895). The basis of an easement by implication "`is the presumption of a grant arising from the circumstances of the case'" Marshall v. Martin, 107 Conn. 32,36, 139 A. 348 (1927). "`The presumption, however, is one of fact and whether or not the grant is to be implied in a given case depends upon the terms of the deed and the facts in that case.'" Rischall v. Bauchmann, supra, 132 Conn. 644, quoting Dotenv. Bartlett, 107 Me. 351, 354, 78 A. 456 (1910).
Under the facts and circumstances of the present case, the court finds that the evidence is sufficient to establish an easement by implication over the McEachern property. There was unity of title in the Bochows and the Justinius' prior to the severance of lots 6 and 8. See Rischall v. Bauchmann, supra,132 Conn. 642-43. The Rapp map indicates that a permanent and obvious servitude is imposed on lot 8, the McEachern property, in favor of lot 6, the Matranga property. Plaintiffs' Exhibit 6. The deeds from the Bochows and the Justinius' to Mann include a reference to the Rapp map which clearly indicates the existence of the "Wood Road" bisecting McEachern's property. Plaintiffs' Exhibit 6. The same reference is included in McEachern's deed. There was testimony that the "Wood Road" was used for automobile traffic in 1972, and this fact is bolstered by the court's view of the disputed area. Further, due to the topography, it could reasonably be assumed at the time of the conveyance to Mann that the road could be used for access to lot 6. Moreover, due to the severe grade in the property and the limited access, the court finds that the "Wood Road" is "highly convenient and beneficial for the enjoyment" of lot 6. (Internal quotation marks omitted.)Rischall v. Bauchmann, supra, 132 Conn. 643. Lastly, the court finds that the Bochows and Justinius' did not intend to leave lot CT Page 9589 6 without a reasonable access after conveying lot 8 and, therefore, by implication, they intended to create an easement over lot 8. See Hollywyle Assn., Inc. v. Hollister, 164 Conn. 389,398, 324 A.2d 247 (1973), quoting Collins v. Prentice,15 Conn. 39, 44 (1842). "`[T]he law will not presume, that it was the intention of the parties, that . . . [the grantor] should so convey a portion as to deprive himself of the enjoyment of the remainder.'"
Moreover, it is immaterial that the Bochows and the Justinius' sold the servient estate, lot 8, prior to selling the dominant estate, lot 6. In Sieger v. Riu, 123 Conn. 343,197 A.2d 735 (1937), the court dealt with this same factual scenario. The common grantor sold the servient estate to the defendant's predecessors in title and later sold the dominant estate to the plaintiffs. The plaintiffs claimed an easement by implication through the defendant's lands. The court held that the timing of the severance was of no moment: "`As the right is annexed to the estate, for the benefit of which the easement or servitude is created, the right is not destroyed by a division of the estate to which it is appurtenant. And the owner or assignee of any portion of that estate may claim the right, so far as it is applicable to his part of the property, provided the right can be enjoyed as to the separate parcels without any additional charge or burden to the proprietor of the servient estate.' See alsoBuckley v. Maxson, 120 Conn. 511, 518, 181 A. 922 (1935). The facts bring the case squarely within the rule. An implied easement was reserved. There is no merit in this claim of the defendants." Sieger v. Riu, supra, 123 Conn. 346-47. The court finds that the fact that the common grantors conveyed the servient tenement prior to the dominant tenement is likewise of no merit to McEachern.
The Matrangas argue at page 3 of their pretrial memorandum, relying on the Rapp Map, exhibit 6, that their implied easement is created by the "general principle . . . that `where an owner of land causes a map to be made of it upon which are delineated separate lots and streets and highways by which access may be had to them, and then sells the lots, referring in his conveyances to the map, the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands.'" Lake Garda Company v. D'Arche, 135 Conn. 449, 453,66 A.2d 120 (1949), quoting Whitton v. Clark, 112 Conn. 28, 32,151 A. 305 (1930). Utilizing this theory, the Matrangas contend that they can "improve" the road for regular vehicle traffic or "`any CT Page 9590 [other] situation reasonably to be anticipated,'" even though the "Wood Road" has not been developed. Matranga pretrial memorandum, p. 4, quoting Lake Garda Company v. D'Arche, supra, 135 Conn. 455.
The court finds, however, that the implied map easement cases that the Matrangas rely on are not applicable to the circumstances of the present case. The implied map easement cases deal with lots in a subdivision that are bounded by roads that are open to the public, not private driveways or private wood roads that bisect other lots. See, e.g., Stankiewicz v. MiamiBeach Assn., Inc., 191 Conn. 165, 166-67, 464 A.2d 26 (1983) (dispute over gates erected across public streets that were on the perimeter of the parties' properties); Gerald ParkImprovement Assn. v. Bini, 138 Conn. 232, 234-35, 83 A.2d 195
(1951) (dispute over obstruction placed across public roads that abut the parties' properties); Lake Garda Company v. D'Arche,
supra, 135 Conn. 450, 453 (dispute over obstruction placed across public streets that were on the perimeter of the parties' properties; "the precise extent of the owner's obligation to openthe streets delineated on the map to the public" is fact dependent) (emphasis supplied); Whitton v. Clark, supra,112 Conn. 33 (dispute over access to road that abuts, rather than bisects, parties' properties; "`[w]here the owner of village property makes and publishes a map of it, with streets distinctly delineated, and then sells lots bounded on these streets, he comes under obligation to his vendees to open the streets to thepublic'") (emphasis supplied); see also 3 R. Powell, Real Property, Sec. 34.06, pp. 34-52, 34-54 — 34-55 (1994) (referring to map easement cases as requiring a "bounding street" as opposed to a bisecting street).
The court finds that the facts of the present case are more analogous to the situation in Rischall v. Bauchmann, supra.[2]
See Stankiewicz v. Miami Beach Assn., Inc., supra, 191 Conn. 169
n. 6 (map easement has a limited application); see also R. Powell, supra, Sec. 34.06, pp. 34-52, 34-54 — 34-55 (map easement applicable to "bounded streets"). The situation contemplated in the map easement cases would be analogous to this case if the parties were disputing access to or use of the private passway or the "existing private road," a road open to the public which abuts the property of all the parties and gives them access to their homes. This is not the issue before the court, however. The present case deals with a private easement that the Matrangas are claiming for access to their property only, that bisects McEachern's property. In essence, the Matrangas are attempting to CT Page 9591 establish a private right-of-way for themselves, by implication, over the "Wood Road."
In Rischall v. Bauchmann, supra, 132 Conn. 639-42, the dispute surrounded the use of a concrete sidewalk that bisected Rischall's land. The Bauchmanns claimed an easement by implication, for their private use, over a sidewalk which provided access from their home, over the Rischall's land, to Broad Street in Meriden, Connecticut. Id., 639. The topography of the land provided that this was the only reasonable access to Broad Street. Id. The sidewalk was identified on a subdivision map filed with the town clerk of Meriden. Id. Moreover, Rischall knew of the existence of the sidewalk over his property when he purchased the property. Id., 641-42. The court found that the sidewalk had been used by the Bauchmanns' predecessors in title, openly and continuously, and was reasonably necessary for the fair enjoyment of the property due to the topography. Id., 641.
The court finds similar facts in the present case. The Matrangas are asserting an easement by implication for the private use of the "Wood Road" that bisects McEachern's land. Based on the topography, the court finds that this is the only reasonable access to lot 6. The "Wood Road" was identified on the Rapp map, and the deeds in the McEachern chain of title specifically refer to the Rapp map. The court finds that McEachern knew or should have known of the existence of the "Wood Road" when he purchased his property. Further, based on the inclusion of the "Wood Road" on the map and the evidence that automobile travel occurred on the road, the court finds that its use was sufficiently open and continuous to alert the parties to the existence of the easement. Moreover, due to the sloping topography that the court encountered during the view, the court finds that the easement is "highly convenient and beneficial for the [Matrangas] enjoyment" of the property. (Internal quotation marks omitted.) Rischall v. Bauchmann, supra, 132 Conn. 643. Therefore, the court is of the opinion that the principles ofRischall v. Bauchmann, rather than the map easement cases should guide the court's determination in this case.
Under Rischall v. Bauchmann, supra, 643, the scope of the easement is more limited than that in the map easement cases. In the map cases, the grounds of the easement can be improved; LakeGarda Company v. D'Arche, supra, 135 Conn. 455; whereas, in the balance of implied easement cases, the servient tenement is subject to "all such visible uses and incidents as are reasonably CT Page 9592 necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made." (Emphasis added.) See also Siegerv. Riu, supra, 123 Conn. 347 (dominant estate-holder cannot impose "any additional charge or burden to the proprietor of the servient estate.")
Based on the evidence and the court's view of the property, the court finds that when the grant was made in this case to McEachern's predecessors in title in 1973, the "Wood Road" was 8 feet wide and was used for occasional motor vehicle traffic. Therefore, the court finds that the Matrangas have an implied easement over the McEachern property to this extent.
With respect to the Pender property, lot 7, an express easement in favor of lot 6 is contained in the deeds out from Burton Sherwood. Plaintiffs' Exhibit 15; Plaintiffs' Exhibit 14; Defendants' Exhibit 2. The reservation of the easement in the deed, delivered in 1953, provides that "[r]ights of Grantors, his heirs and assigns to pass and repass for all purposes whatsoever over the existing wood road running through the rear portion of said premises." Plaintiffs' Exhibit 15. Therefore, the issue before the court is the scope or width of the easement over the Pender property.
In Wilson v. DeGenaro, 36 Conn. Sup. 200, 415 A.2d 1334
(Super.Ct. 1979), affirmed and opinion adopted, 181 Conn. 480,482, 435 A.2d 1021 (1980), Judge Freedman addressed the issue of the scope of a right-of-way contained in an express easement. In that case an easement "as now laid out" was reserved in a deed conveyed in 1927. Id., 200. The plaintiff argued that "as now laid out" was unambiguous, in that the easement width should be determined as of the conveyance in 1927 Id., 201. The defendant argued that the phrase was ambiguous and should be construed against the grantor. Id. The court held that the term was unambiguous and found that the width in 1927 was controlling, writing that, "`[o]rdinarily, a grant or reservation of a right of way by instrument referring to an existing way at the place contemplated, and not otherwise indicating the width of the passage, operates to limit the width to that of the existing way . . . .' Such a reference leaves `little ground for the contention that the intended width was other than that of the existing way.'" (Citation omitted.) Id., 204.
In the present case, the express reservation of easement CT Page 9593 allowed the lot 6 title holder "to pass and repass for all purposes whatsoever over the existing wood road running through the rear portion of said premises." (Emphasis supplied.) Therefore, based on Wilson v. DeGenaro, supra, 36 Conn. Sup. 203-04, the court finds that the width of the easement over the Pender property should be determined as of the time of the reservation of easement, 1953. Based on the aforementioned evidence, including the Rapp map, the testimony and the court's view of the "Wood Road," the court finds that the width of the easement on the "Wood Road" over the Pender property is 8 feet. Further, as set forth in the express reservation of easement, the Matrangas can use the 8 feet "for all purposes whatsoever." Plaintiff's Exhibit 15.
Again, in order for the court to enter a temporary injunction, the plaintiffs must prove (1) a reasonable degree of probability of success on the merits; (2) irreparable harm with no adequate remedy at law; and (3) the harm likely to be suffered by the applicants is greater than that suffered by others. SeeGriffin Hospital v. Commission on Hospitals Health Care, supra,196 Conn. 457-58.
The court finds that McEachern and Pender have both established the prerequisites to this court's issuance of a temporary injunction. With respect to the first element, reasonable probability of success, based on the evidence presented the court finds that McEachern and Pender could reasonably be expected to prevail on their claims of trespass since the Matrangas have excavated outside of the eight foot width of the easements. Id. The second element, irreparable harm, is presumed in the case of a continuing trespass. See Wambeck v.Lovetri, 141 Conn. 558, 564, 107 A.2d 395 (1954) ("[o]rdinarily,except in cases of trespass, a plaintiff is entitled to an injunction only in the event that he can show that the threatened conduct will cause him irreparable damage") (emphasis supplied); see also Glyk and Associates v. Winston-Salem Southbound RailwayCo., 285 S.E.2d 277, 279 (N.C.Ct.App. 1981) ("where there is a continuing trespass or wrongful interference with the present right of possession, the court will ordinarily give relief by temporary injunction, pending the action, with such reasonable restrictions as the exigencies of the case may require"); 42 Am.Jur.2d Injunctions, Sec. 149, p. 907-08 (1969) ("injury from repeated or continuing trespasses is generally irreparable"); 43A C.J.S., Sec. 78, p. 84 (1978) ("[t]he general rule permits injunctive relief for repeated or continuing trespasses, even in CT Page 9594 cases where the damage is nominal and no single trespass causes irreparable injury"). The court, in its discretion; Walton v. NewHartford, supra, 223 Conn. 167; finds that the harm to be suffered by the Matrangas as a result of the imposition of the injunction is less than that which would be suffered by McEachern and Pender should the injunction not be imposed. Id.
Therefore, the court issues a temporary injunction "in favor of the plaintiffs as follows: The defendant[s], [their] . . . agents, servants and employees are enjoined from performing any and all acts outside an area [four feet] . . . from either side of the center line of the right-of-way as presently located on the property of the plaintiffs." Wilson v. DeGenaro, supra,36 Conn. Sup. 210.
This temporary injunction is conditioned upon each of the two plaintiffs, Pender and McEachern, posting a ten thousand ($10,000) dollar bond within thirty (30) days of the date hereof.
Riefberg, J.