[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Abington Limited Partnership brings this action against all the named defendants[1] to settle title to its property; against defendant Talcott Mountain Science Center for trespass and misuse of easement over its property; against defendants Talcott Mountain Science Center, Metro Mobil CTS of CT Page 7414 Hartford, Inc., Chase Family Ltd Partnership No. 7, Arch Communications Corporation, Hartford Television, Inc., and New England Weather Service, Inc. for overburdening the easement over its property; and against defendant Katherine Vidal Smith for breach of deed warranty and of sales contract. Plaintiff seeks a judgment settling title, a permanent injunction and monetary damages.
The defendants deny plaintiff's allegations, and the defendants, (other than Katherine Vidal Smith), interpose special defenses that they have an easement over plaintiff's property by grant or reservation, and/or by implication or necessity.
This court concludes that plaintiff has failed to prove its counts of quiet title, trespass, and misuse of easement against the defendants, (other than Katherine Vidal Smith), because those defendants have an easement over the disputed road, which they have not overburdened. Plaintiff has also failed to prove its counts of breach of warranty and contract against defendant Katherine Vidal Smith. It has also failed to prove its right against all defendants to an injunction or monetary damages.
The facts are as follows: plaintiff Abington Limited Partner (hereinafter Abington), essentially the alter ego of Michael Konover, owns fee title to a certain private road, known as Montevideo Road, running from Albany Avenue (Route 44) in Avon, through a portion of plaintiff's property. Plaintiff has built a beautiful home off Montevideo Road, about a quarter of mile from the road, overlooking the Farmington valley towards Simsbury.
Montevideo Road connects to a road running north through more of plaintiff's property, then along the border of plaintiff's property and State of Connecticut land, and ultimately to the Heublein Tower atop Talcott Mountain.
About 100-150 feet east of the road to the tower, Montevideo Road forms a continuous way with a gravel road called Gibraltar Lane which curves east and south towards a roundabout which overlooks a rocky vista to the south and east towards Hartford. Several houses and the defendant Talcott Mountain Science Center (hereinafter Science Center) are located along Gibraltar Lane. The owners of these houses and the Science Center have no access to a public road other than over Gibraltar Lane and Montevideo Road. Prior to and during the pendency of this action, plaintiff has granted easements to the land owners, other than the Science CT Page 7415 Center, over Montevideo Road to reach Albany Avenue.
In 1987 a corporation controlled by Michael Konover, purchased 98 acres of land on Talcott Mountain including Montevideo Road, from defendant Katherine Vidal Smith (hereinafter Smith) and ultimately conveyed the property to plaintiff. The deed and sales contract in this transaction warranted and promised clear title except for the recitals and encumbrances stated therein.
In 1955 the United States government condemned 6.34 acres of land on Gibraltar Lane for a NIKE missile site (hereinafter referred to as the Federal Parcel) together with a sixty foot-wide, non-exclusive, non-restricted easement from Albany Avenue over Montevideo Road and Gibraltar Lane to that site (hereinafter referred to as the Federal Easement). Later in that year the federal government purchased the Federal Parcel from its then owner Hartford Times, Incorporated, and leased additional land surrounding the NIKE site for a masking area.
In 1967, having decided to close the NIKE site, the United States conveyed the Federal Parcel and the Federal Easement, to the Town of Avon for educational purposes. From 1970 to 1975 the Town leased the Federal Parcel to the Science Center and in 1975 conveyed both the Parcel and the Easement to the Science Center.
The Science Center is a non-profit educational facility founded in 1965. It began as an endeavor by seven cooperating school districts, under the auspices of the Town of Avon, to focus on a science oriented curriculum, specializing in astronomy, geology, meteorology, radio electronics, and weather forecasting. It received funds from towns sending public school students to its school and from tuition of private students. When the Science Center leased from the Town of Avon, it conducted classes in buildings on the Federal Parcel and also used the land around the Federal Parcel for nature field trips and for access to and from Gibraltar Lane. After the Science Center was deeded the Federal Parcel, it undertook renovating the existing buildings and constructing new classroom buildings on that Parcel.
In 1980 the State of Connecticut conveyed to the Science Center 13.8 acres of land on the north and south side of the Federal Parcel. In the late 1980's the Science Center planned to expand its facilities to the south on the land acquired from the CT Page 7416 State (hereinafter referred to as the State Parcel), and in 1989 started constructing a building containing administrative offices, class rooms, TV studios and a planetarium. When the building was completed in 1992, the Science Center conducted classes and educational programs on both the Federal and State Parcels. It uses a driveway over the State Parcel as its main access to Gibraltar Lane.
As originally conceived, the Science Center planned a school of 200 gifted students. However, it has never had more than 64 students, and the Town of Bloomfield has since restricted the maximum number of students to 100. The Science Center had 62 students in the 1987-88 school year 46 students in 1991-92, 60 students in 1992-93 and 47 students in 1994. Thus, there has been no significant student increase since the Science Center started to use its building on the State Parcel. Part of the reason is that in recent years the Science Center has shifted to televising its science educational programs to public and private schools nearby and in other states. Currently 60-70% of its programs are so transmitted.
Its students travel to the Science Center by bus from pick-up locations in West Hartford and Avon. Similarly the public attending lectures and planetarium programs get to the Science Center mainly by buses or vans. The Science Center has made a conscientious effort to minimize traffic on Montevideo Road.
Several traffic studies and much testimony of traffic experts in both sides of this case were submitted and adduced at trial. After carefully considering all the evidence, this court concludes no significant increase in traffic on Montevideo Road occurred in the periods before and after the Science Center began utilizing its facility on the State Parcel.
Defendants Metro Mobile CTS of Hartford, Inc., Chase Family Ltd. Partnership No. 7, Arch Communications Corporation, Hartford Television, Inc., and New England Weather Service, Inc. (hereinafter the Electronic Defendants) all have licensing or leasing agreements with the Science Center giving them rights to locate antennas, weather radars and satellite dishes and similar transmitting and receiving devices on the Federal and State Parcels. These devices are affixed to towers or poles. Although more sophisticated they are not dissimilar from radar dishes and radio antennas the military had on the NIKE site. These communication systems are used by the Electronic Defendants for CT Page 7417 commercial purposes, but also by the Science Center for educational purposes, including transmission and reception of scientific programs tracking satellite and weather systems, bouncing signals off the moon, and listening to Jupiter sounds. The equipment is unmanned and employees of the Electronic Defendants travel on Montevideo Road to make repairs only two or three times a month. The licensing or rental fees they pay the Science Center go to fund the Science Center's educational activities.
The Science Center is surrounded by State land on the north and east, private land owners on the south, and the high cliffs of Talcott Mountain on the west. It is completely land locked. If it were denied the right to travel from the State Parcel to Albany Avenue, it would have to close.
The Science Center, its predecessors in title and its neighbors on Gibraltar Lane have been using Montevideo Road to reach Albany Avenue since 1913. No prior owner of Montevideo Road and of the land plaintiff acquired in 1987 has ever contested the right of these people on Gibraltar Lane to traverse this one and half miles on Montevideo Road until the plaintiff did so by initiating this action in 1989.
Plaintiff does not and cannot object to the Science Center and the Electronic Defendants travelling on the Federal Easement to get from the Federal Parcel to Albany Avenue. Its sole claim is that by the Science Center and the Electronic Defendants going from the State Parcel to Albany Avenue they are trespassing on plaintiff's land and misusing or overburdening the Federal Easement.
The issues raised are: (A) Does the Science Center (hereinafter to include the Electronic Defendants) have in its chain of title an easement by grant or implication to pass from the State Parcel over Montevideo Road; (B) Does the Science Center have that right by virtue of the Federal Easement; (C) Even if it does not, is an injunction the appropriate remedy; (D) Even if it does not, has the plaintiff proven monetary damages, and (E) Has the plaintiff proven its claim of breach of warranty and contract against defendant Smith.
 A.
The facts relating to an easement by grant or implication are CT Page 7418 as follows:
In 1889 Matthew H. Bartlett deeded to Robert Hoe the entire Talcott Mountain which included land now owned by plaintiff Abington and defendant Science Center. That property had the following significant landmarks and characteristics: a road, known as Montevideo Road, running in a north-south direction from Albany Avenue through the land and connecting to another road running to the tower on top of Talcott Mountain; the tower itself; a lake to the west of the road going to the Tower; an area to the southeast, known as Gibraltar, providing vistas to the south and east towards Hartford.
In Hoe's time the area around the tower was used for picnicking and recreation. Primary access to the tower by carriage was over Montevideo Road and the tower road. There was some evidence of a road from Simsbury Road (Route 185) to the tower but it is equivocal. This court concludes from its on-site inspection that the main way people must have gotten from Simsbury Road to the tower in 1889 was by hiking up a trail. The topography of the land from the connection of Montevideo Road and the tower road north to the tower and east and south to Gibraltar is in places rocky and steeply graded. It is passable by vehicle only over roads.
In 1890 Hoe deeded Montevideo Road and about one half of his property, through which runs Montevideo Road, and including the lake, to his mistress Cornelia N. Whitehead. He retained land to the north and east, over which ran the northerly half of the road going to the tower, and included the tower itself and the Gibraltar area to the east. The conveyance was subject to a right of way created in a deed by Henry Bartlett to D.W. Bartlett, dated September 23, 1873, giving D.W. Bartlett "the right to pass and repass on foot and with carriage over said private way (now Montevideo Road), the same to be 20 feet from the Albany Turnpike to the stone wall at the Cottage Gate thence to the Lake and on the borders of the Lake 12 feet in width and from the place where it leaves the Lake to the Tower 20 feet in width." Hoe retained no other access from the balance of his land to a public road.
Hoe died in 1809 and when he did, Whitehead recorded the Hoe deed. After Hoe's death, she married Owen Roberts and then died in 1912. On her death a dispute arose between Hoe's executors and Roberts as to the ownership of the property given to Whitehead. A law suit ensued. While that case was pending, Hoe's executors CT Page 7419 sold all the property Hoe had retained to G.F. Heublein. Title to the Whitehead piece was settled in Roberts in 1916 after Roberts paid the Hoe estate $21,000, and Hoe's executors withdrew the civil action.
A few weeks later on August 31, 1916, Roberts and G.F. Heublein, Inc., successor in title from G.F. Heublein, entered into an indenture (hereinafter the 1916 Indenture) whereby the road going to the tower was moved from adjacent to the lake to about 150 feet eastward of the lake and running generally parallel to the old road, a distance of about 1000 feet until it rejoined the old road. The Indenture stated: "The intent of this instrument is to create a right of way in favor of said G.F. Heublein, Incorporated, its successors and assigns, on and along said macadam roadway in lieu of the existing right of way between the two points of juncture and to terminate the right of way appurtenant to the land of said G.F. Heublein, Incorporation in said driveway between said points."
At the time of the 1916 Indenture there existed a 1913 map showing Gibraltar Lane where it is today. The change brought the road within about 90 feet of the Heublein property line but did not connect it with Gibraltar Lane.
The Whitehead-Roberts land passed by a series of conveyances to defendant Smith and then to plaintiff in 1987. The Hoe-Heublein land passed by a series of conveyances to the State of Connecticut and then to the Science Center in 1980.
1.
The Science Center first claims an easement by grant by virtue of the 1890 Hoe to Whitehead deed which incorporated the right of way, in the 1873 Bartlett to Bartlett deed, over Montevideo Road to Albany Avenue and over the road leading to the tower. It argues that after the conveyance to Whitehead, Hoe's Gibraltar land was blocked from access to any public road and since Hoe could not have intended that, the right of way in the Bartlett to Bartlett deed should be construed as meaning Hoe had the right to travel from Gibraltar over Montevideo Road to Albany Avenue. The evidence is clear that in 1890 no road to or from Gibraltar had been established.
The language in the deeds does not support the construction the Science Center seeks. Our Supreme Court has said that in CT Page 7420 determining the character and extent of an easement created by a deed, it will look not only to the language of the deed, but also to "the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties." Lago v. Guerrette, 219 Conn. 262, 267 (1991).
Here the situation of the Hoe Gibraltar land after the Whitehead conveyance is that its access to a public road became difficult. The surrounding circumstances included the fact Whitehead was Hoe's mistress, he was not likely to hold her at arm's length and be as precise as he might otherwise have been in wording a deed. Nevertheless, the language used in a deed has significance and should be given its "ordinary import", Mackin v.Mackin, 186 Conn. 185, 189 (1982) and plain meaning. The 1873 deed clearly delineates a right of way therein described, but it does not state words of a grant of an easement from Gibraltar over Montevideo Road.
In Lago v. Guerrette, supra, the Supreme Court held that although the deed there in question did not give the plaintiff the right to travel south over Janet Lane to Janet Road, "it certainly was inferable that there was some linkage in [the grantor's] mind" (id., p. 268) to give that right from the fact of the similarity in the name of the lane and road. This court believes that case is limited to its facts and does not give rise to a general principle, that the Science Center seeks, that allows for the creative construction of words in a deed to create an easement by grant.
The Science Center, secondly, claims an easement by grant by virtue of the 1916 Indenture. It argues that the change in the location of the tower road brought it within 90-100 feet of Heublein property line and because Gibraltar Lane from 1913 on was shown on a map and certainly existed on the ground, Roberts must have intended for Heublein to have the right to go over that 90-100 feet from the existing Gibraltar Lane to Montevideo Road. The Indenture, however, is very precise as to the relocation of the tower road and of the intent of the instrument. It does not expressly create an easement from Gibraltar and this court will not distort the meaning of the words used to find such an easement by grant.
2.
When we turn to the Science Center's claim of an easement by CT Page 7421 implication, or in this case by necessity, this court is not limited to construing words in a deed but can implement fundamental public policy relating to utilization of land. Again, we must go back to Hoe, the common owner in the chain of title of plaintiff and the Science Center, and focus on his conveyance to Whitehead.
Our law presumes that a grantor will not convey a portion of his land so as to deprive himself of the enjoyment of the remainder. Collins v. Prentice, 15 Conn. 39, 44 (1842) "An easement by necessity will be imposed where a conveyance by the grantor leaves the grantor with a parcel inaccessible save over the lands of the grantor, or where the grantor retains an adjoining parcel which he can reach only through the lands conveyed to the grantee." Hollywyle Association, Inc. v.Hollister, 164 Conn. 389, 398-99 (1973).
Easement by necessity does not rest on the implied intent of the parties because intent in that situation is recognized to be a fiction of the law, Robinson v. Clapp, 65 Conn. 365, 385
(1895), and "merely disguises the public policy that no land should be left inaccessible or incapable of being put to profitable use." Hollywyle Association, Inc. v. Hollister, supra, p. 40.
Because imposition of an easement by necessity impairs the rights of the servient estate owner, "the element of necessity has been rather strictly construed and made to depend on the situation of the parties, the nature and adaptability of the property, and surrounding circumstances." id. p. 401. However, the weight of authority is that the necessity need only be reasonable. Marshall v. Martin, 107 Conn. 32, 37 (1927).
Here, the court finds that after his conveyance to Whitehead, Hoe did not have access by carriage from the tower to Simsbury Road. But he did nave access to Albany Avenue by virtue of the Bartlett to Bartlett right of way over the tower road. After the conveyance to Whitehead, that tower road went northerly along the lake and about three quarters of the way up the lake, veered to the east to the border of the land Hoe retained and then proceeded north over Hoe's land to the tower. The point where the tower road entered Hoe's retained land was about 1400 feet[2]
from its connection with Montevideo Road to the south and about the same distance from the Gibraltar area. While it may have been more convenient for Hoe to get from Gibraltar to Albany Avenue CT Page 7422 over Montevideo Road rather than having to go north over his own property 1400 feet until he could enter on tower road, that in itself does not create the right to an easement by necessity. A grantor is not landlocked when he has difficulty getting from all parts of his land to a public road, as long as he can get from some parts of his land to a public road.
As stated in Marshall v. Martin, supra, p. 37, "If the situation is such that a landowner has absolutely no access to his property except across the land of his grantor, the presumption [of an easement by necessity] is clear and the right undoubted. If he has such access over other land of his own, the mere fact that such access is inconvenient or expensive will not raise the presumption of a grant of a more convenient way over the land of the grantor."
There can be a situation where access to a public road from one remote part of a grantor's land, even over his own land, could be so difficult and so expensive as to render such access as "no better than none at all, and there would be equal reason for presuming a grant [of an easement by necessity] under such circumstances as in the case where there was no access." Id.
Here, however, the terrain observed by the court of the 1400 feet from what is now the Gibraltar Lane area to the point where the tower road crossed onto the land Hoe retained was not excessively steep or difficult of passage, nor has the Science Center offered any evidence of the expense of smoothing out a way for a carriage.
Thus, this court concludes that no easement by necessity was created in favor of Hoe that could be passed on as an appurtenance in the chain of title to the Science Center.
It must be emphasized an easement by necessity arises when one landowner owns all the land and subsequently conveys a portion of it to another. Thus, the present situation the Science Center finds itself of being landlocked and having absolutely no access to a public way, except over Montevideo Road, does not create for it an easement by necessity over plaintiff's property because there is lacking unity of title with the plaintiff. The Supreme Court has stated in Hollywyle Association, Inc. v.Hollister, supra, p. 399 that the "requirement of unity of ownership is a strict one". CT Page 7423
In two recent cases, however, the court has indicated the requirement may be "an obsolete vestige of feudalism" and it has signalled its inclination to reconsider the requirement when the right case comes along Carbone v. Vigliotti, 222 Conn. 216,223-24 (1992); Branch v. Occhionero, 239 Conn. 199, 202 (1996).
This is such a case. The necessity of the Science Center to reach a public road is total. Montevideo Road across plaintiff's property exists. The additional burden of traffic on that Road by the Science Center accessing onto it from its State Parcel is minimal. Only the requirement of unity of title, which may be vestigial, prevents this court from reaching the perfectly common sense decision that under these circumstances the Science Center has an easement by necessity over Montevideo Road. However, as a trial court obligated to follow appellate court rulings, it will not make that decision. Fortunately, Carbone v. Vigliotti, supra, provides the sound legal basis for reaching the same result.
 B.
The general rule is that an easement cannot be used for the benefit of land other than the dominant estate. Curtin v.Franchetti, 156 Conn. 387, 389 (1968); Lichteig v. Charinetz,9 Conn. App. 406, 411 (1986). In Carbone v. Vigliotti, supra, p. 225 the Supreme Court explained the reason for and the intent of the rule was "to protect the servient estate from the use of an easement in a manner and to an extent not within the reasonable expectation of the parties at the time of its creation." The court cited 5 Restatement of Property § 484 for the proposition that the parties to the conveyance contemplate "a normal development of the dominant estate." id. at p. 224.
The court in Carbone went on to hold, "We conclude that when no significant change has occurred in the use of the easement from that contemplated when it was created, . . . the mere addition of other land to the dominant estate does not constitute an overburden or misuse of the easement." id. at p. 225.
The Federal Easement over Montevideo Road and Gibraltar Lane to the Federal Parcel contains no language of limitation. Where an easement is in general terms without any restrictions as to its use, "[s]uch a grant is to be construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant." Birdsey v.Kosienski, 140 Conn. 403, 413 (1953). Reasonable use is not CT Page 7424 limited to that to which the land was being put when the way was granted. id. at 413. In Birdsey the court allowed the right to transport sand and gravel over a right of way even though no gravel pit had been opened on the dominant estate when the easement was created.
Thus, the reasonable expectation of the parties to the condemnation creating the Federal Easement, both the federal government as the owner of the dominant estate, and plaintiff's predecessor in title as the owner of the servient estate, was that the dominant tenant could use the easement for any legal purpose.
When the federal government condemned the easement to the Federal Parcel, it also leased surrounding land from the Hartford Times Estate as a masking area. This masking area is the State Parcel, subsequently acquired by the Science Center and where it has located the addition to its school. Thus, if regard must be given to the intended use of the Federal Easement at the time of its creation, it was clearly contemplated the Federal Parcel was to be used in conjunction with land that became the State Parcel.
The Science Center was operating its school on the Federal Parcel when in 1980 it acquired the State Parcel. Thereafter, it conducted its educational program on both Parcels. This was a normal development of its dominant estate.
Up until 1989, plaintiff concedes, through the testimony of Mr. Konover, that the Science Center's use of the Federal Easement was not unreasonable. Plaintiff contends, however, that after 1989, when the Science Center started to construct its new facility on the State Parcel, and particularly after 1992 when the Science Center completed it, the Science Center has been misusing and overburdening the easement.
The facts do not bear out plaintiff's contention. The report of the traffic engineer hired by the Science Center, Mr. Fred M. Greenberg, indicated that a traffic count collected at the entrance to the Science Center, during the week of May 23 through June 3, 1991 amounted to an average traffic volume of 162 vehicles compared to the average traffic volume for the same week in 1994, of 155 vehicles. He concluded there was "essentially no change in traffic volume during the past three years."
In 1987 plaintiff retained Storch Associates to conduct on CT Page 7425 November 9, an automatic traffic count on Montevideo Road near its intersection with Albany Avenue. That count indicated 309 trips over a one day period. If there is subtracted from that number, the generally accepted average trips of ten per day generated by the 17 private residents on that road, the Science Center generated 139 trips on November 9, 1987.
The plaintiff's traffic engineer indicated in his 1994 report that the total traffic volume at the entrance to the Science Center, on a typical weekday in 1994 ranged from 130 to 160 cars. That count compared to the Storch Associates count of 139 cars in 1987, constitutes an insignificant difference.[3]
Moreover, plaintiff's traffic engineer concluded that the traffic volume he attributed to the Science Center in 1994 was not "unlike those found in typical residential neighborhoods consisting of perhaps 12 to 18 homes. Traffic engineers would consider these volumes very light traffic which does not result in traffic congestion and, with reasonable and prudent drivers, would not be considered hazardous . . . . [I]n terms of absolute numbers, the traffic rarely exceeds one vehicle trip every two minutes, again, a volume which traffic engineers would describe as very light."
The court further finds the number of students and employees at the Science Center have declined since 1989, further substantiating a decline in traffic. Also, the students and visitors come to the Center by bus or van in the attempt by the Center to minimize traffic on Montevideo Road.
This court concludes on all the evidence, that the Science Center's use of the Federal Easement from and to the State Parcel is within reasonable expectations and consistent with reasonable development of its property, and, most importantly, that use has caused no significant change in traffic over Montevideo Road. Furthermore, in absolute numbers the traffic generated by the Science Center has remained "very light."
As for the Electronic Defendants, their towers, antennas, radars and equipment on the State Parcel are unmanned and their employees traverse Montevideo Road to effect repairs or maintenance only a few times a month.
Thus, this court concludes, pursuant to Carbone, that the Science Center and the Electronic Defendants by passing from the CT Page 7426 State Parcel over Montevideo Road, are acting within the rights accorded them by the Federal Easement and are not misusing or overburdening that easement.
 C.
Even if this court had not concluded, as it does, that the defendants are asserting their rights granted by the Federal Easement, it still would have decided the plaintiff is not entitled to injunctive relief.
The law respecting injunctions is well settled. An injunction is an equitable remedy and the granting of one rests within the sound discretion of the court according to principles of equity.Moore v. Serafin, 163 Conn. 1, 6 (1972). Even if one has an enforceable right the court may not necessarily grant injunction relief, particularly when it would be incompatible with the equities of the case. id. at 8; O'Connell v. Larkin, 1 Conn. App. 366,368 (1984). When balancing the benefit to the plaintiff against the harm to the defendant, the court determines an injunction would cause harm to the defendant greatly disproportionate to the benefit to plaintiff, it may refuse to issue an injunction. Moore v. Serafin, supra, 6, 7.
In the instant case, the harm an injunction would cause the Science Center by denying it the right of access to Albany Avenue over Montevideo Road is simply enormous. Being land locked, it has no access to a public road. At the trial there was testimony it could build a road to the tower road over state property then down from the tower to Simsbury Road. The cost would be $5,000,000. The court finds that alternative an enormous economic waste. Moreover, it is impossible because the State would never give its approval due to the extensive damage such a road would do to the state park.
The consequence of an injunction is that the Science Center would have to close. Students in Greater Hartford would be denied a superior scientific education. The Science Center building on the State Parcel, containing class rooms, TV studios and a planetarium would go unused. The bank mortgage of some $1,500,000 would be rendered worthless.
Against this loss must be weighed the minimal, if any, benefit the plaintiff might gain from an injunction. It is not as though the Science Center were asserting a new right across CT Page 7427 plaintiff's land. Montevideo Road exists and the Science Center has a right to travel it to and from the Federal Parcel. The only benefit plaintiff would realize from the injunction is that an insignificantly fewer number of vehicles might traverse Montevideo Road. Since the house in which Mr. Konover lives is a quarter of a mile from the Road, he cannot even hear those vehicles.
Based on this balancing of the equities, even if the Science Center and the Electronic Defendants did not have their rights under the Federal Easement to travel from the State Parcel, this court would have denied an injunction.
 D.
Similarly, this court would have denied plaintiff any money damages because plaintiff failed to prove any. The only evidence on that issue was the testimony of a real estate appraiser that plaintiff's property diminished in value by some $800,000. The appraiser based his first opinion on the premise that since the Science Center was tripling the size of its physical facilities by its construction on the State Parcel, the traffic it generated on Montevideo Road would triple. This premise is false. This court has found no significant increase in traffic as a result of the Science Center's use of the State Parcel.
His second appraisal used the sales comparison approach to value but never related the values of plaintiff's property and of comparables to traffic volume. His methodology was flawed. This court gives no credence to his report or testimony.
Thus the court concludes plaintiff failed to prove damages caused by an increase, if any, of traffic on Montevideo Road generated by the Science Center's use of the State Parcel.
 E.
Plaintiff's action against defendant Smith for breach of deed warranty and sales contract fails for several reasons:
 (1) The court concludes the Science Center's and Electronic Defendants' right to access Montevideo Road from the State Parcel derives from the Federal Easement which was disclosed as an encumbrance and exception to the warranty in Smith's deed to CT Page 7428 plaintiff's predecessor in Title.
 (2.) The Science Center did not use the State Parcel, which is the basis of plaintiff's claim, until after Smith conveyed the property to plaintiff's predecessor in title.
 (3) Most importantly plaintiff conceded in its brief and at oral argument that if the Science Center's rights derive from the Federal Easement, plaintiff has no claim against Smith.
 (4) Finally, plaintiff failed to prove any damages as a result of the alleged breach of warranty or contract.
Based on the foregoing, the court concludes plaintiff has failed to prove any of the counts in his complaint. Judgment, accordingly, may enter in favor of all defendants.
Robert Satter Judge Trial Referee
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 7452